By the Court,

Bronson, J.
The second, third and fourth pleas have been considered by the counsel as substantially alike, andas forming one class; and the fifth, sixth, seventh and eighth pleas, as constituting another class; and it will therefore be unnecessary to examine more than one plea in each of these general divisions.
It is objected that the picas in the first class do not confess and avoid the action, but set up a different contract from that alleged in the two first counts of the declaration, to which they are pleaded. The objection is not well founded. The pleas do not set up a contract by the defendant as president of the Washington Banking Company, but that he, being president, *100 made the contract. The fact that he vvas an officer of the bank, is not alleged for the purpose of denying his individual liability, if the contract vvas valid; but for the purpose of characterizing the transaction, and proving that although the contract stated in the declaration was actually made, it was so connected with the illegal transactions of the bank as not to be obliga[173] tory on the defendant. The pleas do not deny the contract, but set up new matter to show that it was not binding in point of law (Myers v. Morse, 15 Johns. R. 425).
The next objection urged against the form of the first class of pleas is, that they allege the Washington Banking Company to be a foreign corporation, created by the legislature of New Jersey, without setting forth the act of incorporation. We can not judicially take notice of the acts of the legislature of another state, and where a party in pleading makes title or claims a right under such foreign law, he must set forth the statute, or so much of it as may be necessary to establish his claim (Hempstead v. Reed, 6 Com. R. 480). And where the question arises as matter of evidence, the party claiming under foreign law must give legal proof of its existence (Packard v. Hill, 2 Wendell, 411). But the defendant does not make title or set up any right under the Washington Banking Company, nor does he rely on any tiling in the charter of that company for the purpose of defeating the action. However plenary may have been the powers of the corporation under the laws of New Jersey, it could have no right to carry on the business of banking in the state of New York. The fact that this was a foreign corporation was only alleged for the purpose of showing that it had no legal right to keep an office in Wall street for the purposes mentioned in the plea. Strike out the words “ being a foreign body corporate, created by the legislature oí the state of New Jersey,” and the allegation will still remain that the company kept ai. office in the city of New York for certain purposes, “ they, the said Wash ington Banking Company, not being authorized by laio so to do.” It is a mat ter of no moment whether this was a mere voluntary association of individuals under a particular name, or whether it had a legal existence and capacity to act; nor, if it were a corporation, was it important to allege that it was created by this or any other state. The question is, whether it had been expressly authorized by law to do the acts complained of (1 R. S. 712, §6.)
The pleas are, I think, sufficient in point of form, and the remaining inquiry is, whether they are good in substance. The statute provides [174] (1 R. S. 712, § ti), that “ no person, association of persons .or body-corporate, except such bodies corporate as are expressly authorized by law, shall keep any office for the purpose of receiving deposites, or discounting notes or bills, or issuing any evidences of debt, to be loaned or put in circulation as money; nor shall they issue any bills or promissory notes or other evidence of debt as private bankers, for the purpose of loaning them, or putting them in circulation as money, unless thereto specially authorized.” The seventh section imposes a penalty of $1000 for every violation of the statute. It will be seen that the sixth section contains two distinct prohibitions—the one against keeping an office, for the purpose of doing particular acts; and the other against doing a particular act, whether an office be kept for that purpose or not (The People v. Bartow, 6 Cowen, 290; The People v. Brewster, 4 Wendell, 499). The pleas in this case are framed under the first branch of the section. They allege that the Washington Banking Company kept an office in the city of New York, for the purpose, among other things, of issuing the notes of the company, they not being authorized by law so to do. It is not alleged that any notes were actually issued by the corporation in this state. It is entirely consistent with the plea to suppose that the bills which the defendant agreed to redeem were put in circulation in New Jersey, and only found their way into this state in the ordinary course of trade.
*101 Issuing bills of a foreign corporation in this state for the purpose of putting them in circulation as money, is prohibited by law; but an agreement, even if made by the corporation itself, to redeem the notes within this state, would not be against either the letter or the spirit of the statute. Although such an arrangement may tend tu keep the bills in better credit, and give them a wider circulation in this state, the transaction would still be unobjectionable. It is not illegal to pass, circulate or redeem the notes of foreign corporations, unless they are of a denomination under five [175] dollars (Laws of 1830, p. 357, ch. 295; Laws of 1835, p. 37, 164).
The contract stated in the declaration is that the defendant should receive and discount all such notes of the W ashington Banking Company as the plaintiff should procure or receive in the course of his business as a broker, and pay the amount of the notes; the plaintiff allowing a discount of one-eighth of one per cent. The first important allegation in the plea is, that the Washington Banking Company, of which the defendant was President, kept an office in the city of New York for the purpose of issuing notes, &c., they not being authorized by law so to do. Although this was an illegal act, it can, when taken by itself, have no possible influence on the contract between these parties. If the company was engaged in one unauthorized pursuit, and if the defendant, as their president or otherwise, was cognizant of the fact, it could have no legal bearing upon another and separate transaction, which was in itself free from objection.
But it is further averred that the agreement was entered into between the plaintiff and the defendant, so being president as aforesaid, and for the benefit of the company, the better to enable them to carry on their operations and business of discounting and issuing bank notes as aforesaid, at their office in Wall street, against the form and effect, true intent and meaning of the statute; of which the plaintiff had notice. We have already seen that the contract of the defendant, although he is stated to be the president of the company, was personal, binding him individually; and it can be of no importance that the personal responsibility which he assumed was for the benefit of the company. He might retain the fruits of the contract in his own hands, or give them to a third person, without in any manner affecting the nature of the transaction between himself and the other party to the agreement. The contract to redeem, although made for the benefit of the corporation, or even had it been made by the corporation itself, was valid. It was not forbidden by any law of this state. This brings us to the remaining averment, that the agreement was entered into the better to enable the company to carry on its unauthorized business in Wall street.
Contracts made for an illegal purpose, or which are against the policy of the law, can not in general be enforced (Holman v. Johnson, Coup. 441; Trovinger v. McBurney, 5 Cowen, 223; Langton v. Hughes, 1 Maule & Sel. 593). But here the act to be performed was legal. It was neither immoral nor against any principle of public policy. How it could facilitate other and unauthorized transactions of the company, is not shown, nor can I perceive any necessary connection between the two things. It is said by counsel that the company wished to keep their notes in circulation, and if they did not make arrangements to redeem here, the brokers who purchased the notes would go to the bank and demand specie. That may be true, but it does not prove the contract illegal. That was no prohibition against the circulation of foreign notes, nor was it against public policy that they should be redeemed here, instead of being sent home for that purpose. It was beneficial to our citizens that these notes should be converted into current funds with as little delay and expense as possible. The motive for redeeming in New York was to aid the circulation of the bank; and that motive would exist whether the company kept an office in Wall street or not. The office *102 was kept for a different purpose, to discount notes and issue bills; and if the redemption of bills .could have any possible bearing upon that business, its influence could only be remote and incidental, not direct or immediate.
It can not, I think, be maintained that a contract, which is in itself free from vice, can be avoided on the ground that it may possibly facilitate an illegal transaction. It may be conceded that if a building was rented to the company or to the defendant as their officer or agent, for the illegal purpose of keeping an office in New York, the landlord if he acted with notice, could not collect the rent. Such a contract would stand directly connected with an illegal transaction; the building would be rented for the very purpose of bringing about a transgression of the law. But' if the defendant, while keeping the office, were to contract for his board and lodging, or [177] for a carriage to ride between the Wall street office and the banking house in New Jersey, it can hardly be pretended that the contract would be invalid, although the other party might know that the defendant was engaged in a pursuit forbidden by the statute, and although the agreement might tend in some degree to facilitate the illegal operations and business of the company. These are stronger cases than are put in the plea, and stand more immediately connected with the illegal transaction; and yet I can not doubt that such contracts might be enforced. It is impossible to foresee where the doctrine would carry us, should it be held that a contract is void merely because it may have some remote connection with an illegal transaction.
The second class of special pleas present a different question. The declaration alleges that the plaintiff, on the 28lh December, 1833, in pursuance of the agreement, left a package of bills at the office of Solomons, which the defendant wrongfully refused to receive and discount. The substance of the fifth plea is, that a Large portion and number of the notes left at the office on the day aforesaid were respectively under the denomination of five dollars, and that they were notes issued by a foreign corporation, &c.; by means whereof, and by force of the statutes the agreement to discount the same was and is wholly void in law. The allegation is not that the agreement between the parties extended to bills under .the denomination of five dollars, as well as bills of that sum and upwards; but only that apart of the bills left for redemption on the day in question were under the denomination of five dollars. This may be a very good answer to the action so far as the plaintiff seeks to recover the amount of any small bills contained in the package, but it does not follow, as the plea supposes, that it rendered the agreement wholly void. In Parkin v. Dick (11 East, 502), on which the defendant relies, the act of shipping the naval stores was forbidden by law, and subjected not only the goods but the ship itself to forfeiture. But including small notes in the package was not in itself an illegal act; and if the [178] defendant was not bound to receive them, it did him no harm. All the special pleas were, I think, bad in substance, and were properly overruled by the superior court.
On the trial exceptions were taken to the charge of the judge, upon which several questions had been made on the argument. Although the defendant was the president of the bank, and that fact was known to the plaintiff, there is nothing to show that the defendant intended to contract for the bank, or that he had any authority to do so; nor does it appear that the plaintiff supposed he -was contracting with the bank, or that lie would have been willing to make such an arrangement. The undertaking of the defendant was in its terms personal, binding him individually; and the jury were properly instructed that the burden lay upon him to show that the contract was made on behalf of the corporation. Although the judge spoke in pretty decided language, it was but a mere commentary on the facts of the case, and if the attention of the jury was not withdrawn from the true question in issue, a *103 bill of exceptions will not lie. That is only an appropriate remedy where there has been some error in matter of law. In substance, this was an agreement for the redemption of the notes of a foreign corporation, and nothing more. It was neither against the letter nor spirit of the statute.
This was not a collateral, but an original undertaking on the.part of the defendant, founded on a sufficient consideration moving between the parties to the contract. The discount agreed to be allowed by the plaintiff was a sufficient consideration for the promise of the defendant to receive and pay the amount of the bills which should be delivered.
Judgment affirmed.