HOOK *vs.* GRAY.

It is well settled that a contract providing for the performance of an illegal act, and having its consideration in such act, can not be enforced; but where the contract is disconnected with the original unlawful act, and is founded on a new and distinct consideration, although for money advanced in satisfaction of an unlawful transaction, an action may be maintained upon it.

ERROR to the New-York common pleas. The suit was brought by Gray to recover of Hook the sum of $250, and interest, being one half the amount of counsel fees paid by Gray for defending a suit commenced against him by one Christopher P. Tappen, which was carried to the court of errors; upon an alledged agreement by Hook to pay one half of all liabilities which should be incurred by Gray in defending any suit brought, or to be brought, against him by Tappen. The defendant pleaded the general issue, and gave notice of special matter. On the trial the plaintiff gave in evidence the following agreement, under the hands and seals of the parties: " Memorandum of an agreement made and entered into this first day of July, 1842, between John Hook of Westchester county, and state of New-York, of the first part, and John Gray of the city of New-York, of the second part, whereas, upon a settlement of certain accounts and transactions between the parties hereto, relative to fees, &c. collected in the office of inspector of flour of the city of New-York, the said party of the second part did give to the said party of the first part, his certain promissory note, payable ninety days after date, for the sum of $376,85, as a final settlement of all accounts and balances existing and due by either of the parties hereto to the other, relative to such transactions, and in full settlement and discharge of all claims and demands existing between them, with the exception of certain liabilities and expenses already incurred by the said John Gray, in or about certain proceedings existing between said John Gray and one Christopher P. Tappen, and for which the said John Hook

Hook *v.* Gray.

was liable to pay an equal one half thereof.   And whereas the
said John Gray has declined to pay said note above mentioned by
reason of certain further proceedings having been taken by the
said Christopher P. Tappen, against the said John Gray, rela-
tive to the said office of inspector of flour and of the fees of said
office, and for any liability already incurred, or hereafter to be
incurred, by the said John Gray, in said proceeding the said
John Hook is liable, and the said John Hook hereby admits his
liability, to pay his equal one half thereof.   And whereas the
said John Hook is desirous to have the said note paid, and has
applied to said John Gray to pay the same, the said note having
passed to one Henry F. Ketchum of the city of New-York.
Now, therefore, in consideration of the premises, of payment of
said note by said John Gray, and the sum of one dollar to him
in hand paid, the receipt whereof is hereby acknowledged, the
said John Hook hereby covenants, promises and agrees to and
with the said John Gray, to pay him, said John Gray, the full
and equal one half of all liabilities of every kind, manner or
description heretofore incurred, or which may hereafter be in-
curred, by the said John Gray, or which he, the said John Gray,
may be liable to pay for or by reason of any suit or suits, pro-
ceeding or proceedings heretofore brought, now pending, and
which may hereafter be brought by said Christopher P. Tappen
against said John Gray, or by said John Gray against said
Christopher P. Tappen, relative to said office of inspector of
flour, or to the fees of said office ; hereby covenanting, promis-
ing and agreeing to hold said John Gray fully harmless and in-
demnified in the premises, and to pay such one half of any such
liability to said John Gray upon demand."

The plaintiff then produced the note for $376,85, mentioned
in the above agreement, and proved the defendant's indorsement
thereon.   He next called as a witness David Graham, Esq., who
testified that he was acquainted with the plaintiff, Gray, and
was employed in his behalf as solicitor and counsel in a suit
brought against him by Christopher P. Tappen, about the year
1839.   That Tappen filed a bill in chancery before the vice
chancellor of the first circuit, against Gray, for the purpose of

obtaining an injunction against Gray to prevent his receiving the profits of the office of flour inspector of the city of New-York, to which office Gray had been appointed by Governor Seward, in the place of said Tappen, whose term of office had expired during the recess of the senate, and on the ground that the said plaintiff had been illegally appointed to said office. That the witness, in behalf of the said plaintiff, demurred to the bill filed by Tappen. That the vice chancellor gave judgment upon said demurrer in favor of Tappen. That under the advice of witness Gray appealed to the chancellor, who reversed the decision of the vice chancellor. That thereupon Tappen appealed to the court of errors. That after the cause was in the court of errors, witness called upon Gray for $500, for counsel fees for the argument of the cause before the court of errors, $250 thereof being the fee of the attorney general of the state, who was associated with witness in behalf of plaintiff upon such argument, and $250 being witness' own counsel fee for the argument. That receipts were given by witness to Mr. Gray upon receiving said fees. The cause was regularly heard before the court of errors. That the court decided in favor of Mr. Gray, affirming the decision of the chancellor, overruling that of the vice chancellor, and establishing the right of Mr. Gray to the office.

The defendant's counsel admitted that the interest upon the alledged claim of the plaintiff for the one half of such counsel fees, amounted to thirty-two dollars and eighty-three cents, and the plaintiff rested his case. The defendant's counsel called as a witness Jacob Acker, and offered to prove by him the matters stated in his notice, viz. that the plaintiff Gray and the defendant Hook were candidates at the same time for the office of inspector of flour. That their chances of success in obtaining the appointment to the said office of inspector of flour from the then executive of this state, William H. Seward, were about equal. That there was an arrangement entered into between Hook and Gray, whereby Hook was to withdraw his application for the appointment to the said office; that for so withdrawing his application for the said office, and by aiding Gray in obtaining the appointment, Hook was to receive one half the fees and emolu-

Hook *v.* Gray.

ments arising and accruing from said office of inspector of flour during the time and as long as the said Gray held the said office. That through the aforesaid arrangement between the parties, the said Gray was, on or about the 27th day of May, 1839, appointed to the said office of inspector of flour. That on or about the same time, Gray appointed Hook as deputy inspector of flour. That the said note of $376,85 was given to the defendant by the plaintiff for his services as such deputy. That the said note was passed by Hook in the ordinary course of busi- ness to one Henry F. Ketchum. That the same was duly pro- tested for non-payment. That Gray declined and refused to pay the note, in consequence of certain proceedings at law, instituted by one Christopher P. Tappen relative to said office of inspector of flour, against the said Gray, and until the said Hook should sign an agreement to pay one half the costs and expenses in- curred by the said Gray by reason of the said proceedings of Tappen against him, the said Gray, as Hook was to receive one equal proportion of the proceeds of said office of inspector of flour; whereupon the defendant made and executed such an agreement as was mentioned and set forth in the plaintiff's dec- laration, and that the said liabilities mentioned in the said several counts of the said plaintiff's declaration, if any did occur, arose from an agreement to divide the fees of said office of inspector of flour as aforesaid, and was part of the consideration thereof. To which testimony the plaintiff objected, because the same constituted no defence to the action, and was not admissible under the notice. The court sustained the objection, and re- fused to permit the testimony to be given. To which decision the defendant duly excepted. Whereupon, the proofs being closed, the judge charged the jury, and they found a verdict for the plaintiff for $282,83, and the defendant brought a writ of error.

*J. T. Brady*, for the plaintiff in error.

*E. Sandford*, for the defendant in error.

Hook *v.* Gray.

*By the Court,* EDMONDS, J.   The evidence offered on the trial below sought to establish the fact of an original corrupt agreement between these parties, in relation to the office of flour inspector, in order thence to infer that the contract on which this suit was brought, was void, because of the illegality of its consideration.   If such original agreement had been the only consideration of this contract, the evidence might perhaps have been proper ; for there can be no doubt that the agreement sought to be proved was illegal and void, as corrupt in itself and contrary to principles of public policy.   (*Parsons* v. *Thompson,* 1 *H. Black.* 322.   *Tappan* v. *Brown,* 9 *Wend.* 175.   *Law* v. *Law,* 3 *P. Wms.* 391.)   But the contract on which the plaintiff below sought to recover, and which was in evidence, showed very distinctly that that was not the only consideration.   That was doubtless part of it, but there were farther considerations, either of which were sufficient to support the agreement.   One was Gray's promise to pay the note that was then in the hands of Ketchum, and the other was the sum of one dollar then presently paid to Hook.

It is well settled that a contract providing for the performance of an illegal act, or having its consideration in such act, can not be enforced ; but where the contract is disconnected with the original unlawful act, and is founded on a new and distinct consideration, an action may be maintained upon it, though it could not be maintained upon a contract arising out of the illegal act.   (*Armstrong* v. *Toler,* 11 *Wheat.* 267.)   In this case, the illegal act has been performed—the unlawful contract executed—before that now in suit was made.   Gray's note had been transferred to, and was in the hands of, one who may have been a bona fide holder ; and in consideration of his paying that note, this contract was made.   The court below might then well have held the promise to be unconnected with the illegal act, and founded on a new consideration, unconnected with the original act, though remotely caused by it.   The court, in *Armstrong* v. *Toler,* illustrate the position by remarking that, however strongly the laws may denounce the crime of importing goods from the enemy in time of war, the act of defending a

prosecution instituted in consequence of such illegal importation, is perfectly lawful.

In the case before us, the illegal act was the agreement to divide the fees of the office, and create an illegal deputation to a public office. I do not understand the evidence offered as intended to show that the agreement to defend the suit of Tappen was any part of the original agreement. But the case, as made out on the trial, with the addition of the evidence offered, went to show that agreement to have been subsequent and collateral to the alledged illegal act, the direct and immediate consideration of which is not illegal. *Faikney* v. *Reynous*, (4 *Burr.* 2069,) was a case very much in point, and is a strong case to show that a subsequent contract, not stipulating a prohibited act, although for money advanced in satisfaction of an unlawful transaction, may be sustained in a court of justice.

It is in obedience to these authorities that I am inclined to think the court below did not err, and their judgment ought to be affirmed.

