[No. 11654. In Bank. — December 2, 1889.]

S. L. JONES ET AL., RESPONDENTS, v. MARY L. HANNA ET AL., APPELLANTS.

EXECUTORS AND ADMINISTRATORS—PURCHASE FOR BENEFIT OF EXECUTOR — ILLEGAL CONTRACT— PUBLIC POLICY—DEFENSE BY INDORSER OF NOTE. — A contract by an executrix with third persons who have full knowledge of the facts, that they shall buy the personal property of the estate at a probate sale thereof for her account and risk, and advance the purchase price, and that she will pay them a percentage on the amount of the purchase, and also on the amount of resales by them, is unlawful and void, because in aid of an act expressly prohibited by law, and because it is contrary to the policy of express law, without regard to any beneficial result to the estate; and an indorser of a note given to such third person by the executrix in pursuance of such contract may defend against the note in the hands of the payees as being founded upon an illegal consideration. (THORNTON, J., dissenting.)

ID. — CONTRACT INTERDICTED BY LAW. — It is a universal rule that courts will not aid parties in the enforcement of contracts interdicted by law. The rule is founded upon public policy, and should be rigidly enforced by the courts, as standing upon the great moral obligation to refrain from placing one's self in relations which ordinarily excite a conflict between self-interest and integrity, and involves a much broader question than those raised in cases to set aside probate sales and enforce trusts. (THORNTON, J., dissenting, holds that the rule does not extend to cases where the contract appears to be lawful in itself, and founded upon a consideration which is only collaterally connected with a prohibited sale of property, by an executor or administrator, which is only voidable, and not absolutely void.)

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court, and in the dissenting opinion of Mr. Justice Thornton.

*William M. Pierson*, for Appellant.

*H. A. Powell*, for Respondent.

PATERSON, J. —The findings show that the defendant Hanna, while acting as executrix of the last will of Peter N. Hanna, deceased, procured an order of sale of personal property belonging to the estate. On the day of

the sale she entered into an agreement with the plaintiffs that they should buy the property offered for sale "for her account and risk," and advance the purchase price; that she would pay them two and one half per cent commission on the amount of the purchase, and five per cent on the amount of sales they might thereafter make. She further agreed to "guarantee them against loss or damage," give them possession of the goods until other security was furnished, and pay them interest on the amount advanced at the rate of nine per cent per annum. In pursuance of this agreement the plaintiffs purchased the goods for her benefit, using the name of one Haynes as purchaser. Plaintiffs thereupon removed the property from the place of sale to defendant Hanna's store, and began to sell the same for her benefit.

On the thirteenth day of September, 1883, and while the greater portion of the personal property so purchased was at the Clay Street store undisposed of, plaintiffs required of the defendant Mary L. Hanna security under the agreement of September 6, 1883, and thereupon she made and executed her promissory note for ten thousand dollars, and procured the defendant William Bihler to indorse it, and thereafter to deliver it to the plaintiffs.

After adding to the figures $29,957, — the amount paid for the goods and advanced by plaintiffs, — the commissions of plaintiffs in purchasing and selling the property, and interest on the advances, and deducting therefrom the proceeds, less the expenses of making the sales, a balance remained due the plaintiffs of $9,281.49. Upon the surrender of the prior note, the defendant Hanna made, executed, and delivered the note in controversy, indorsed by the defendant Bihler, who had full notice of all the facts.

The court found that "plaintiffs had actual knowledge and notice before and at the time of the execution of the agreement of September 6, 1883, that the defendant

Mary L. Hanna was the duly appointed, qualified, and acting executrix of said estate, and that the object and purpose of making the said agreements and transactions was to realize as large a sum as possible for the estate, and also to make a profit to herself out of the personal property to be bought in, and which was actually bought in, at said sale."

Judgment was entered in favor of the plaintiff, and the defendant Bihler has appealed on the judgment roll alone.

Upon the facts stated, the judgment is erroneous, and must be reversed. The contract out of which this transaction arose is unlawful and void,—void because it is in aid of an act expressly prohibited by law, and because it is contrary to the policy of express law.

Section 1576 of the Code of Civil Procedure provides: "No executor or administrator must, directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale."

It is a universal rule that courts will not aid parties in the enforcement of contracts thus interdicted by the law.

Our code provides: "That is not lawful which is,— 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals." (Civ. Code, sec. 1167.)

Wharton says that "a contract whose object is to violate a statute will not be enforced by the courts of the state by which the statute was enacted. . . . . A party who goes into an illegal enterprise risks all he puts in, and cannot, in case of his confederates proving untrue or the adventure miscarrying, recover back his advances." (Wharton on Contracts, secs. 354, 360.)

Here all the parties went into the transaction with their eyes open. The plaintiffs expected a share in the profits of a scheme prohibited by law. As said in *Bowers* v.

*Bowers,* 26 Pa. St. 74: "The question here is not upon the legality of the administration, but upon the sufficiency of the consideration for the defendant's promise; and as that, in its very nature, endangered the purity of the trust, the law will not sanction it." The contract upon which the note in suit is based was made for the benefit of Mrs. Hanna and plaintiffs, although the court finds that it was made "to realize as large a sum as possible for the estate." The result to the estate in any particular transaction is immaterial. The rule is one of universal application; it is founded upon public policy, and should be rigidly enforced by courts, because it "stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity." (*Michoud* v. *Giroud,* 4 How. 555. See also the following authorities: *Danielwitz* v. *Sheppard,* 62 Cal. 339; *Swanger* v. *Mayberry,* 59 Cal. 91; *Edwards* v. *Estell,* 48 Cal. 194; *Gardner* v. *Tatum, ante,* p. 370; *Porter* v. *Jones,* 52 Mo. 399; *Saltmarsh* v. *Beene,* 4 Port. 283; 30 Am. Dec. 525; *Blasdel* v. *Towle,* 120 Mass. 447; *Ohio L. I. & T. Co.* v. *M. I. & T. Co.,* 11 Humph. 1; 53 Am. Dec. 742; *Slocum* v. *Wooley,* 43 N. J. Eq. 451; *Dillon* v. *Allen,* 46 Iowa, 299; 26 Am. Rep. 145; *Bowers* v. *Bowers,* 26 Pa. St. 74; 67 Am. Dec. 398.) The question involved is much broader than those raised in the cases to set aside probate sales and enforce trusts relied on by respondent.

Plaintiffs' contention, that defendant Bihler is estopped under section 3116 of the Civil Code from taking advantage of the facts relied upon, cannot be sanctioned. The respondents did not take the note without notice, and they are not *bona fide* holders. Section 3116 of the Civil Code has not added any new liability of an indorser,— certainly not in favor of those who are not *bona fide* holders. The note in suit was given in pursuance of the original and unlawful contract; it is "the other security" referred to in the

written agreement. Under such circumstances any defense which the maker might make may be urged by the indorser. (*Davis* v. *Seeley*, 38 N.W. Rep. 901; *Smith* v. *Silsby*, 55 Cal. 470; 3 Kent's Com. *80; 1 Daniel on Negotiable Instruments, sec. 164.)

There are other points made by respondents, but we do not deem it necessary to consider them in this opinion.

Judgment reversed, and cause remanded, with directions to enter judgment in favor of defendant.

SHARPSTEIN, J., WORKS, J., FOX, J., and BEATTY, C. J., concurred.

THORNTON, J., dissenting.—I dissent. In this case I adopt the opinion of the commission, drawn up by Commissioner Vanclief, and concurred in by Belcher and Foote, commissioners, when the case was before Department One of this court, as a clear and correct exposition of the law applicable to it. That opinion is as follows:—

"This action is upon a promissory note made by Mary L. Hanna to the defendant Bihler, and by him indorsed to the plaintiffs. The defendant Bihler alone answered, and from a judgment against him this appeal is taken upon the judgment roll alone, without any bill of exceptions; and the only error assigned is, that the findings of fact by the trial court do not support the judgment.

"The trial court found that Peter Naylor Hanna died testate in the city and county of San Francisco, December 16, 1881; that on the twenty-first day of January, 1882, the superior court of said city and county admitted the will of said deceased to probate, and appointed Mary L. Hanna—the widow of the testator—and Catherine N. Hanna executrices, and John Hanna executor, of said will, all of whom qualified; but John Hanna died on the fourth day of June, 1883, and after his death Mary L. and Catherine N. Hanna continued to act as executrices;

and in July, 1883, procured an order of said court authorizing a sale at auction of certain personal property of said estate, which sale was made on the seventh day of September, 1883, by Newhall & Co., who were then licensed auctioneers, and who were employed by the executrices to make the sale.

"On the sixth day of September, 1883, and prior to the commencement of the sale, the defendant Mary L. Hanna executed a written contract with the plaintiffs (respondents), of which the following is a copy:—

"'SAN FRANCISCO, Sept. 6, 1883.

"'MESSRS. S. L. JONES & Co.: *Gentlemen,*—I hereby request and authorize you to purchase for my account at the sale of the stock, fixtures, etc., of the firm of J. & P. N. Hanna, as advertised for sale by Messrs. Newhall Sons & Co., or as may hereafter be advertised for sale by them during the present month, such quantities and kind of merchandise and fixtures and at such prices as are agreed upon by and between William B. Thompson and Thomas J. Haynes. In consideration of the above I hereby agree to pay you a commission of two and one half per centum on the amount of said purchase, also a commission of five per centum upon the amount of any sales which you may make of the whole or any part of said merchandise or fixtures for my account, and I further authorize you to cover by fire insurance the full amount of such purchases, with twenty per centum added. Interest for money advanced for the above purposes to be at the rate of nine per centum per annum. I hereby guarantee you against all loss or damage by reason of the above request and authorization, and agree to make a full settlement with you within ninety days from date. As part security you will please hold the goods purchased until such time as other security is furnished to your satisfaction.          MARY L. HANNA.

"'Witness: W. B. THOMPSON.'

"At the time of this agreement the plaintiffs were

regularly licensed auctioneers, and engaged in business as such in the city and county of San Francisco. All that plaintiffs did in connection with the purchase and sale of said property as hereinafter stated was done under and by virtue of said written contract. In accordance with said contract, the plaintiffs, in the name of Thomas J. Haynes, one of their employees, and for the private benefit of the defendant Mary L. Hanna individually, bought at said sale certain personal property belonging to said estate, to the value of $29,957, and paid said last-mentioned sum to said Newhall & Co. Immediately after the sale the property so purchased in the name of Haynes was removed to the store of the defendant Mary L. Hanna, on Clay Street, in said city, and was there exposed for sale for her private benefit, under the immediate supervision of the plaintiffs.

"The sale, as made to Haynes, was reported to the superior court by said executrices, and was duly confirmed on the nineteenth day of December, 1883.

"In addition to the foregoing, the court made the following findings:—

"11. That on the thirteenth day of September, 1883 and while the greater portion of the personal property so purchased was at the Clay Street store undisposed of, plaintiffs required of the defendant Mary L. Hanna security under the agreement of September 6, 1883, and thereupon she made and executed her promissory note for ten thousand ($10,000) dollars, and procured the defendant William Bihler to indorse it, and thereafter delivered it to the plaintiffs.

"12. That upon the maturity of said note, and on the tenth day of May, 1884, the same was taken up and renewed by a similar note, made and executed by the defendant Mary L. Hanna, indorsed by the defendant Bihler, and delivered to plaintiffs.

"13. That the store on Clay Street was operated by the defendant Mary L. Hanna, under the supervision of

plaintiffs, for about seven months, and the greater part of the property so purchased at the auction sale was sold thereat, during that time, at retail, and the proceeds thereof paid to plaintiffs; that thereafter, about the thirtieth day of April, 1884, the remainder of said personal property was sold at public auction by the plaintiffs at the request and for the benefit of the defendant Mary L. Hanna.

"14. That the net result of the purchase and sale of the property of said estate, as aforesaid, was this: adding to the $29,957 the commissions of plaintiffs in purchasing and selling said personal property, and interest on the advances as specified in said agreement, and deducting therefrom the proceeds, less the expenses of making the sales, a balance still remained due the plaintiffs of $9,281.49.

"15. That on the first day of July, 1885, upon the surrender of said note of May 10, 1884, the defendant Mary L. Hanna made and executed, and the defendant William Bihler indorsed, the promissory note set forth and described in plaintiff's complaint, for the sum of $9,281.49, the same being the amount ascertained as aforesaid to be then due plaintiffs from defendant Mary L. Hanna on account of the transactions hereinbefore set forth, and subsequently said note was duly delivered to plaintiffs.

"16. That plaintiffs had actual knowledge and notice before and at the time of the execution of the agreement of September 6, 1883, that the defendant Mary L. Hanna was the duly appointed, qualified, and acting executrix of said estate, and that the object and purpose of making the said agreements and transactions was to realize as large a sum as possible for the estate, and also to make a profit to herself out of the personal property to be bought in, and which was actually bought in, at said sale.

"17. That defendant William Bihler, at the date of

his indorsement of the several notes above specified, had full knowledge and notice that the same were for moneys advanced and loaned by plaintiffs to Mary L. Hanna while such executrix, to enable her to purchase the property belonging to said estate.

" 18. That no part of the principal sum specified in said promissory note has been paid, and that there is still due and unpaid the sum of $593 interest thereon, making in the aggregate $9,874.49 principal and interest still due and unpaid on said note.

"And as conclusions of law, from the foregoing facts, the court finds: —

" That the plaintiffs are entitled to recover of and from the defendant William Bihler the sum of $9,874.49, and costs in this behalf expended.

" It is urged by counsel for the defendant that the contract between the plaintiffs and Mary L. Hanna, out of which the consideration for the note in suit arose, is in contravention of section 1576 of the Code of Civil Procedure, which provides that ' no executor or administrator must, directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale.'

" The general principle is well established that a contract founded upon an illegal consideration, or which is made for the purpose of furthering, aiding, or assisting any matter or thing prohibited by statute, is void. (*Ladda* v. *Hawley*, 57 Cal. 51; *Swanger* v. *Mayberry*, 59 Cal. 91; *McGregor* v. *Donelly*, 67 Cal. 149.) Section 1667 of the Civil Code provides that that is not lawful which is contrary to an express provision of law, or contrary to the policy of express law, though not expressly prohibited, or which is otherwise contrary to good morals.

" But we are of the opinion that these rules of law are confined to contracts which appear to be directly promotive of an illegal or immoral act or object, or which are

founded, wholly or in' part, upon an illegal or immoral consideration, and do not apply to cases where the contract appears to be lawful in itself and founded upon a consideration which is only collaterally and remotely connected with the prohibited transaction.

"In *De Groot* v. *Van Duzer*, 17 Wend. 170, Bronson, J., said: 'It cannot, I think, be maintained that a contract which is in itself free from vice can be avoided on the ground that it may possibly facilitate an illegal transaction. . . . . It is impossible to foresee where the doctrine would carry us, should it be held that a contract is void merely because it may have some remote connection with an illegal transaction.' (*Scott* v. *Duffy*, 14 Pa. St. 18–20; *Falkney* v. *Reynous*, 4 Burr. 2070; *Hook* v. *Gray*, 6 Barb. 398; *Armstrong* v. *Toler*, 11 Wheat. 258.)

"The consideration for the promissory note sued on was principally money loaned by plaintiffs to Mary L. Hanna, and the remainder consisted of commissions for services in assisting her in purchasing and selling the property purchased for her at said sale. All these were lawful in themselves, since none of them is prohibited by any statute, or contrary to the policy of any express law, or otherwise contrary to good morals. The commissions on the sales of the property had no connection whatever with the transaction alleged to be illegal.

"The prohibition relied on (Code Civ. Proc., sec. 1576) is addressed solely to executors and administrators for the benefit and protection of the heirs and others interested in the estate, which protection may be waived by the persons for whose benefit it was provided, it being well settled that a purchase of the property of an estate by the executor or administrator *per interpositam personam*, as in this case, is not void, but only voidable at the instance of the parties interested. (*Boyd* v. *Blankman*, 29 Cal. 33; 87 Am. Dec. 146; *Ives* v. *Ashley*, 97 Mass. 196; *Dunlap* v. *Mitchell*, 10 Ohio, 117; *Williams* v. *Rhodes*, 81 Ill. 574.) If all parties interested should

deem it advisable and agree that the executor should purchase the property of the estate at fair and fixed prices, would a purchase in accordance with such agreement, and entirely free from actual fraud, be even voidable? Would not such an agreement be a good defense to an action by a party to it to set aside the sale on the sole ground of constructive fraud? In view of the construction given to section 1576 of the Code of Civil Procedure by this court, it would seem that it does not prohibit a purchase of the property of an estate by the executor or administrator which is satisfactory to all parties interested, and is not objected to by any of them; it being well settled that persons not beneficially interested in the estate have no right to object, and that the parties interested may waive their right to object, and may ratify the sale either expressly or by acquiescence. And it follows that what they may ratify they might have authorized in advance of the sale, since a ratification is but the equivalent of a previous authority. Taking this view of the case, the record fails to show that Mary L. Hanna, in purchasing the property of the estate of Peter Naylor Hanna, did what was prohibited by law, since it fails to show that any person interested in that estate ever objected to her purchase, and also fails to show who were interested in the estate. For aught that appears, Mary L. Hanna may have been the only heir and the only creditor. If, under any circumstances which may have existed, her purchase was lawful, and not immoral, it should be presumed to have been so until the existence of such circumstances are negatived; and the plaintiffs were entitled to act upon this presumption at the time they advanced money and rendered services in aid of her purchase, unless they had notice of facts not disclosed by the record in this case.

"The cases of *Hotel Co.* v. *Wade*, 97 U. S. 13, and *Schermerhorn* v. *Talman*, 14 N. Y. 123, shed much light upon the questions involved in this appeal, and furnish addi-

tional reasons for our conclusions in this case which we have deemed it unnecessary to assign.

"We advise that the judgment of the court below be affirmed."

I add the following: The property which was to be sold and bought, and as to which the plaintiffs contracted herein, consisted, as described in the letter addressed to the plaintiffs, and signed "Mary L. Hanna" (which the court below found was the only contract entered into between the parties), of "the stock, fixtures, etc., of the firm of I. & P. N. Hanna." In another letter addressed by same to same this property is described as the "entire stock, furniture, etc., of the firm of I. & P. N. Hanna." It is nowhere found that this property, belonging "to the firm of I. & P. N. Hanna," was the property of I. N. Hanna, or that I. N. Hanna was "I. & P. N. Hanna," nor can this court assume them to be the same.

It would be going very far, and a bow-shot beyond the decided cases, to hold that a purchase by the executrix of I. N. Hanna, at public auction, of the property of the firm of which I. N. Hanna was a member, was utterly void. I know of no case which holds it. At most, it was only voidable at the election of the heirs or devisees of I. N. Hanna. The rule applicable to executors is that applicable to all sorts of trustees,—to an executor as trustee for devisees and heirs; and the rule is thus stated in *Campbell* v. *Walker*, 5 Ves. Jr.: "There is no rule that a trustee to sell cannot be the purchaser, but, however fair the transaction, it must be subject to an option in the *cestui que trust*, if he comes in reasonable time, to have a resale, unless the trustee, to prevent that, purchases under an application to the court." The questions here decided were directly adjudicated in the case cited. The above decision was by the master of the rolls, Sir Richard Pepper Arden, afterward lord chancellor as Lord Alvanley.

This rule was, in substance, approved by Lord-Chan-

cellor Eldon, when this case came before him. Lord Eldon's decision is reported in 13 Vesey, where the case is entitled *Campbell* v. *Sanderson.* (See 13 Ves. 601.) The rule is fully stated in Pomeroy's Equity Jurisprudence, sections 958, 1049, 1077, 1078.

The decision may be construed as finding that the executrix purchased at her own sale of the property of the estate of her testator, and we shall so treat it.

That such a purchase is only voidable is expressly ruled in *Boyd* v. *Blankman,* 29 Cal. 34–36, 87 Am. Dec. 146, where the matter is fully discussed. This decision has never been overruled, and is approved in *San Diego* v. *S. D. & L. A. R. Co.,* 44 Cal. 114.

In *Boyd* v. *Blankman, supra,* section 193 of the former probate act was construed. That section is the same as section 1576 of the Code of Civil Procedure, except that in the latter the words "nor must he be interested in any sale" have been added. The whole question, including the effect of this section, was discussed ably and elaborately by the court, speaking by Rhodes, J., and it was held that the section, as it then stood, did not render the purchase by the administrator *void,* but only *voidable.* The object of enacting this section is thus spoken of in the opinion: —

"An examination of the probate act will disclose the intent of section 193, and it is apparent that the object was not to declare who might or who might not become a purchaser of the property of the estate; but it was to prevent the property from being sold at a price less than its true value, which might be the case if the administrator, either directly or indirectly, prevented competition among the bidders by entering into the market, either personally or by his agents, or if, with a view of purchasing, he was tempted to undervalue the property in his proceedings respecting the sale. The protection to the estate designed by that section can be as fully secured by permitting the parties interested in the estate

to set the sale aside and have the administrator declared a trustee, as it would be to construe the section so as to allow strangers to impeach the sale with the consequent risk to the *bona fide* purchaser, without notice from the administrator's agent, of losing the premises he purchased relying on the apparent regularity of the probate proceedings and the confirmation of the sale."

Now, it certainly cannot be held that the words added in section 1576 of the Code of Civil Procedure alter the effect of this statute. They are the same in legal effect. The old section was found in the probate act referring to sales and conveyances of the property of decedents, and so is the section of the code. The title of chapter 7, in which section 1576 is found, is "of sales and conveyances of property of decedents," and the collocation of the sections in each code of laws shows that it was inserted for the benefit of heirs and devisees, and perhaps of creditors, who can alone be injured by such conduct of the administrator or executor, and who alone have a right to set it aside by appeal to a court of equity, or perhaps to the court of probate, whose equitable powers would be sufficient to deal with such a case.

The fact that a court of equity has to be appealed to to set aside the sale shows that the sale is voidable only; for there is no reason to call in aid the power of equity to set aside a sale if the sale were utterly void. If utterly void, the party aggrieved could obtain relief in an action at law.

The words "void" and "voidable" are very loosely used in text-books of approved authors, and in the judgment of courts. Discrimination must always be made in applying the rules of law stated by them on this matter. (See comments on opinion of Rhodes, J., in *Boyd* v. *Blankman*, 29 Cal. 37, 87 Am. Dec. 146, as to the use of those words.) The remarks just referred to will strike every intelligent reader as eminently true.

On the question whether a sale is *void* or *voidable*,

there is one test which never fails. If the title can be passed to a *bona fide* purchaser from the purchasing trustee, then the sale cannot be void; for if void, no title ever passed, and the title to the property bought by Mrs. Hanna through Haynes would and could not pass to any purchaser from her. Nor could a purchaser from her convey title to any one. The sale being utterly void, no title to the property would pass, and Mrs. Hanna could, as executrix of P. N. Hanna, recover it from the parties to whom she sold it.

The learned author Austin, in his lectures on Jurisprudence (see vol. 1, p. 322), says: "The distinction in English law between *void* and *voidable* is the same as that in the Roman law between null *ipso jure* and *ope exceptionis*. The first conferred no right; the second conferred a right which might be rescinded or destroyed by some party interested in setting it aside." If the transaction must be impeached by *exceptio* or plea, it is voidable. If no plea is required to avoid it, it is utterly void. It is null *ipso jure*. In the latter case any stranger may impeach it. In the former, there must be a party interested to set it aside, and in the case before us the devisees under the will may set the sale aside, but a stranger like Bihler cannot. What has Bihler to do with the sale? He had no interest in the property sold. What difference did it make to him what the property sold for, or who bought it? It was all the same to him. We cannot see how he can come in to vindicate a pretended outrage on the majesty of the law, when the sale is lawful as to all persons, the heirs or devisees not objecting.

It would be novel and unprecedented law that a stranger like Bihler could get rid of his obligation in consequence of a sale perfectly legal to him, and concerning which he would not be listened to in any court of justice on an application by him to set it aside. Section 1667 of the Code of Civil Procedure has no appli-

cation here; when it does apply, the contract is wholly void as to the whole world. When the contract is unlawful, the contracting parties have no standing in a court of justice. As soon as that appears, the litigants are dismissed from the forum. Here the subject-matter of Bihler's complaint is only remotely and incidentally connected with the purchase by Mrs. Hanna. His contract is suretyship for Mrs. Hanna for money borrowed by her of the plaintiffs.

To enforce Bihler's contention, we must hold that because Mrs. Hanna purchased property at her own sale as executrix, without any objection by the heirs or devisees, and borrowed money of the plaintiffs to pay it to the estate, for the repayment of which Bihler became surety, Bihler's contract of suretyship never had any validity. One other matter should be recollected. The heirs or devisees cannot have the sale to Mrs. Hanna set aside without paying back to her the money she has paid for it. *It is equity that it should be repaid.* The heirs or devisees, asking equity, must do equity. The above is so well settled that it needs no citation of authority to support it. (But see decree of court in *Campbell* v. *Walker*, 5 Ves., *supra;* 1 Leading Cases in Equity, 234, 257, 260.) Hence, inasmuch as she lost nearly ten thousand dollars by the transaction, she would doubtless be perfectly willing to have the sale set aside on the usual equitable terms. The parties aggrieved cannot set aside the sale without paying back the money; but if the opinion of the majority is correct, Bihler can,— a strange legal conclusion, certainly.

Here a note was given with Bihler as a party, and the plaintiff makes out his right to recover without having to prove anything of the transaction said to be illegal.

"In Connecticut, in 1849," says Robinson (5 Robinson's Practice, 534), "while admitting that if a plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover it, — or in other words,

if he is unable to support it without relying upon an unlawful agreement between himself and the defendant, he must fail,—yet considers that though the parties have been engaged in .business either *malum in se* or merely prohibited by law, if the cause of action be unconnected with the illegal act, and is founded upon a distinct and collateral consideration, it will not be affected by their former unlawful conduct. (*Palen* v. *Clark*, 19 Conn. 232.) Pertinent to this view is the case in the same year of *Gregg* v. *Wyman*, 4 Cush. 329; and the case before the supreme court of the United States in 1854, in which Nelson, J., delivering the opinion of the court, said: 'The assignment was subsequent, collateral to, and wholly independent of the illegal transactions upon which the principal contract was founded.' (*McBlair* v. *Gibbes*, 17 How. 235, 236.)"

We understand the above to be the well-settled rule of law. The plaintiffs herein make their claim on their note, and base no claim on the illegal transaction. The defendant cannot set it up in defense, and the cases above cited from 5 Robinson's Practice sustain this view.

This is a singular case. Mrs. Hanna lost nearly ten thousand dollars by the transaction, all of which the parties interested in the estate got. Still, it is held that the defendant got rid of his obligation because the plaintiffs lent money to Mrs. Hanna to enable her to pay for the property bought by her.

I think the judgment is without error, and should be affirmed.

It should be noted that the prevailing opinion overrules the well-considered case of *Boyd* v. *Blankman*, 29 Cal. 37, 87 Am. Dec. 146, without alluding to it.

Rehearing denied.