86 Cal.Rptr.2d 37 (1999)
72 Cal.App.4th 1438
ESTATE OF Rose Gennett MARTIN, Deceased.
Patrick M. Martin, Petitioner and Appellant,
v.
Alice M. Karlebach, as Executor, etc., Objector and Respondent.
No. B124420.
Court of Appeal, Second District, Division Four.
June 21, 1999.
Review Denied September 29, 1999.
*38 Michael L. Taylor, Los Angeles, for Petitioner and Appellant.
McKenna & Cuneo, R. Wicks Stephens II, Los Angeles, and Thomas Curtiss, Jr., for Objector and Respondent.
CURRY, J.
Appellant Patrick M. Martin (hereafter "Martin") challenges the probate court's denial of his petition to vacate a sale of estate property by respondent Alice M. Karlebach (hereafter "Karlebach"), executor *39 of the estate of Rose Gennett Martin. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND
Rose Gennett Martin (hereafter "Rose"), who was Karlebach's mother and Martin's grandmother, died on March 5, 1995. At the time of her death, Rose owned 35 of the 80 outstanding shares in Refrigeration Supplies Distributors, Inc. (hereafter "RSD"), a family business that had then existed approximately 90 years. Karlebach, who is Martin's aunt, is an officer, director, and shareholder in RSD.
Rose's will made Martin a beneficiary of one-sixth of her residuary estate. The will also nominated Karlebach to be executor should Henry Gennett Martin, Rose's son, fail to qualify as executor.[1] By court order, Karlebach was appointed executor of Rose's estate on May 3, 1995.
To pay estate taxes, Karlebach decided to sell a portion of the estate's RSD shares to RSD. RSD and Karlebach hired Cronkite & Roda, an independent professional appraiser, to place a value on the shares. In September 1995, Cronkite & Roda told Karlebach and RSD that the 35 RSD shares were worth $9.7 million, or approximately $277,142.86 per share, on the date of Rose's death. Following a vote of RSD's board of directors, RSD redeemed 22.5 shares for $6,235 million in November 1995, and the estate made a timely payment of the pending estate taxes.
In late 1996 or early 1997, the federal Internal Revenue Service (hereafter "IRS") began an audit of the estate. On March 19, 1997, Martin filed his objections to the executor's second current account, alleging, inter alia, that Karlebach had secured the probate court's approval of the first current account and report without informing the court that she had a conflict of interest with respect to the sale of the shares. At some point before April 17, 1997, the date of the hearing on Martin's objections, the IRS told Karlebach that it disputed the redemption value of the shares. Pursuant to a stipulation between Martin and Karlebach, the probate court filed an order on May 30, 1997, approving the second current account and report but vacating the portion of the first current account and report approving the sale of the shares. The May 30 order reserved the probate court's rulings on Martin's objections for a later date'.
On December 10, 1997, Martin filed a petition to vacate the sale of the shares. The petition contended that the sale was voidable at his request because Karlebach, as executor, had breached her duty under Probate Code section 9880[2] et seq., not to purchase estate property indirectly without his consent.
On May 29, 1998, the probate court filed an order denying Martin's request to void the sale of the shares. The order states: "[T]he Executor breached her duty under... Section 9880; based on the facts presented, the court is not finding the executrix [sic] engaged in any prohibited selfdealing; the failure of the Executor to comply with ... Section 9880 did not cause the transaction with respect to the redemption of [RSD] stock to be voidable at the election of Petitioner as an interested party; the redemption of the RSD stock should not be voided; the proper remedy in this matter for the Executor's failure to comply with ... Section 9880 is to surcharge the Executor for any damages that the estate did or will incur as a result of the redemption, according to proof which may be considered on noticed petition at a later date; and good cause appearing therefor...."
This appeal followed.

DISCUSSION
Martin contends that the probate court erred in denying his request to void the sale of the shares. We agree.

*40 A. Appealability

The threshold question is whether we have jurisdiction to hear these appeals. Generally, rulings in probate proceedings are not appealable unless expressly made appealable by statute. (Varney v. Superior Court (1992) 10 Cal. App.4th 1092, 1098, 12 Cal.Rptr.2d 865; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 156, p. 221.) Subdivision (a) of section 1300 provides that "an appeal may be taken from the making of, or the refusal to make" any order "[d]irecting, authorizing, approving, or confirming the sale, lease, encumbrance, grant of an option, purchase, conveyance, or exchange of property." Karlebach contends that the probate court's order denying Martin's request to void the sale of the shares is not appealable under section 1300, subdivision (a).
Although we are unaware of any case that addresses the appealability of an order denying a request to void a sale of property after the probate court initially approved the sale and then vacated that order, the issue presented falls within the scope of established principles. Generally, an order that merely declines to vacate a prior order confirming a sale is not appealable. (Estate of McCarty (1915) 169 Cal. 708, 708-710, 147 P. 941; Estate of Ryker (1949) 92 Cal.App.2d 162, 162, 206 P.2d 406; Estate of Depew (1944) 65 Cal.App.2d 81, 82, 88, 149 P.2d 890.) This rule suggests (although we do not so decide) that an order that merely declines to vacate a nonconfirmed sale is also not appealable.
However, as our Supreme Court explained in Estate of West (1912) 162 Cal. 352, 122 P. 953, the appealability of an order of the probate court is determined not from its form, but from its legal effect. In West, the court addressed whether an order vacating an order confirming a sale was appealable under subdivision 3 of former Code of Civil Procedure section 963, a predecessor of section 1300, subdivision (a).[3] (Estate of West, supra, at pp. 353-354, 122 P. 953.) The West court concluded that although the statutory language did not expressly identify such an order as appealable, the order had the effect of directing the executor not to make the sale, and as such, fell within the statutorily defined class of appealable orders.
Here, the order from which Martin appeals goes beyond denying his request to void the sale to determine that the sale "should not be voided," and it limits the remedy for any impropriety concerning the sale to a surcharge on Karlebach. Accordingly, the legal effect of the order is to authorize or approve the underlying sale itself, while withholding a determination on some of its terms, especially, the value placed on the shares. In our view, the order is one "[d]irecting, authorizing, approving, or confirming the sale" of the shares within the meaning of section 1300, subdivision (a), and is therefore appealable.

B. Section 9880

In the present case, the material facts are not in dispute, and the key issue is whether the probate court properly denied Martin's request to void the sale of shares after it found that Karlebach had violated her duties under section 9880. This ruling poses an issue of law that we review de novo. (Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799, 35 Cal.Rptr.2d 418, 883 P.2d 960.)
"An executor ` "is an officer of the court and occupies a fiduciary relation toward all parties having an interest in the estate."` [Citations.] ` "Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions with the beneficiary...."' *41 [Citations.] An executor also bears a `duty to disclose all the facts ... and to refrain from taking an unfair advantage of [the legatees].' [Citation.]" (Estate of Sanders (1985) 40 Cal.3d 607, 616, 221 Cal.Rptr. 432, 710 P.2d 232.)
Section 9880 et seq., establish the duties of executors and other personal representatives with respect to purchases of estate property. (12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 389, pp. 412-414; id. § 477, pp. 495-496.) Section 9880 provides that "[e]xcept as provided in this chapter," an executor may neither "(a) Purchase any property of the estate ..., directly or indirectly," nor "(b) Be interested in any such purchase." This statute is a codification of the principle that executors may not deal with themselves, or place themselves in a position antagonistic to the estate's beneficiaries. (Strudthoff v. Yates (1946) 28 Cal.2d 602, 613, 170 P.2d 873.) Transactions in violation of section 9880 "are not voidonly voidable. [Citations.] They are ` "voidable only at the instance of those interested in the estate."' [Citation.]" (U.S. Fid. & Guar. Co. v. Postel (1944) 64 Cal.App.2d 567, 574, 149 P.2d 183, quoting Santos v. Santos (1939) 32 Cal.App.2d 62, 65, 89 P.2d 164.)
However, section 9883 permits an executor to petition the probate court for an order allowing the executor to purchase estate property in two sets of circumstances, which are stated in sections 9881 and 9882. The probate court may approve such a sale when (1) the executor files written consents from all known heirs and devisees, and shows that the sale is to the estate's advantage (§ 9881), or (2) the decedent's will authorizes the sale (§ 9882). Finally, sections 9884 and 9885 provide that, subject to conditions not relevant here, an executor may buy estate property pursuant to a written contract executed while the decedent was alive (§ 9884) or pursuant to an option given in the decedent's will (§ 9885).
Here, the record amply supports the probate court's determination that Karlebach violated her duties under section 9880. Karlebach is an officer and director of RSD, and she personally owns as many as 5 RSD shares, which, when conjoined with the 35 shares in Rose's estate, gave Karlebach control of up to 50 percent of the outstanding shares in RSD prior to the redemption. She played an important role in determining the redemption price of the shares, and independent of any question about the price of these shares, the redemption of 22.5 outstanding shares would have significantly enhanced the relative amount of control that she exercised in virtue of her own shares. The record thus discloses that Karlebach exercised positions of control over the estate and RSD, that she played a key role in arranging the sale of the RSD shares, and that the redemption personally benefited her through her holdings in RSD.
The key issue, therefore, is whether the probate court erred in denying Martin's request to void the sale of the shares. We find dispositive guidance on this issue in O'Connor v. Flynn (1881) 57 Cal. 293. In O'Connor, the executor of an estate determined that it was necessary to sell some estate property, and obtained a probate court order approving the sale. (Id. at p. 294.) Although the executor wanted to buy the property, he took no action until after Wade, a third party, bought the property at a public auction. (Ibid.) Before the probate court confirmed the sale, the executor approached Wade, who agreed to sell the executor the property. (Id. at p. 295.) This agreement was not disclosed to the probate court, which confirmed the sale of the property to Wade. (Ibid.) Wade then transferred the property to the executor. (Ibid.)
The beneficiaries of the estate challenged this transfer, citing former Code of Civil Procedure section 1576 (O'Connor v. Flynn, supra, 57 Cal. at p. 294), which then provided that "[n]o executor .. . must, directly or indirectly, purchase any *42 property of the estate he represents, nor must he be interested in any sale" (enacted March 11, 1872, and repealed by Stats. 1931, ch. 281, § 1700, p. 687, effective Aug. 14, 1931). The probate court granted judgment in favor of the executor, finding that the executor had acted "in perfect good faith...." (O'Connor v. Flynn, supra, 57 Cal. at p. 295.) The court in O'Connor reversed, reasoning that even if the probate court's finding was correct, the executor had breached his duties by improperly placing himself at odds with the estate's beneficiaries. (Id. at pp. 295-296.) The O'Connor court thus concluded that the executor held the property in trust for the beneficiaries, and directed that the property be conveyed to the beneficiaries or sold at a public auction. (Id. at pp. 296-297.)
Here, as in O'Connor, the probate court apparently found that Karlebach's intentions or good faith did not warrant voiding the underlying sale. Nonetheless, Karlebach arranged for a self-interested purchase of estate property without Martin's consent, and thus, under O'Connor, he was entitled to have the sale of shares voided at his request.[4]
Citing primarily Copley v. Copley (1981) 126 Cal.App.3d 248, 178 Cal.Rptr. 842, Karlebach contends that Rose's will authorized her conduct, and thus her conduct falls under section 9882. However, Copley is factually distinguishable. In Copley, the executor of an estate and trustee of an inter vivos trust sold some of the trust's shares in a family corporation to the corporation in order to pay estate taxes. (126 Cal.App.3d at pp. 254-255, 258-267, 178 Cal.Rptr. 842.) The court in Copley concluded that the executor and trustee had not breached her fiduciary duties because the trust instrument expressly gave her unconditional authority to make such sales. (Id. at pp. 278-280, 178 Cal.Rptr. 842.) By contrast, Rose's will authorizes Karlebach to sell estate property "subject to such confirmation as may be required by law," and thus it falls outside the scope of section 9882.
Karlebach also contends that the probate court was authorized to approve the sale of shares because she did not purchase the shares within the meaning of section 9880, subdivision (a), and she merely had an interest in the sale of the shares within the meaning of section 9880, subdivision (b). She argues that sections 9881, 9882, and 9883 apply only to purchases of estate property by an executor, and that sales of estate property in which an executor merely has an interest are governed by section 9611, which permits the probate court to authorize an executor's acts when "no other procedure is provided by statute...." We are not persuaded, for two reasons.
First, California courts have repeatedly indicated that sales of estate property in which an executor purchases the property or has an interest in the sale are voidable at the request of the beneficiaries. *43 (U.S. Fid. & Guar. Co. v. Postel, supra, 64 Cal.App.2d at p. 574, 149 P.2d 183; Santos v. Santos, supra, 32 Cal. App.2d at p. 65, 89 P.2d 164.)
Second, in view of Karlebach's role as director, officer, and shareholder in RSD, she is properly viewed as having indirectly purchased the shares, within the meaning of section 9880, subdivision (a). The language of this subdivision is traceable to former section 193 of the Probate Act (enacted 1851), which barred an executor from "directly or indirectly, purchasing] any property of the estate he represents," but which lacked any provision resembling subdivision (b) of section 9880. In Boyd v. Blankman (1865) 29 Cal. 19, our Supreme Court explained the broad reach of the language in section 193 of the Probate Act prohibiting direct and indirect purchases of property.
In Boyd, the administrator of an estate arranged for third parties to foreclose on a mortgage secured by estate property and to buy the property in their name but for his benefit. (29 Cal. at pp. 21-22.) The property was then eventually conveyed to the administrator. (Id. at p. 23.) The court in Boyd held that the sales of the property to the third parties were voidable at the request of the estate's beneficiary, reasoning that this rule facilitated the intent of Probate Act section 193, which it described as follows: "[I]t is apparent that the object was not to declare who might or might not become a purchaser of the property of the estate; but it was to prevent the property from being sold at a price less than its true value, which might be the case if the administrator, either directly or indirectly, prevented competition among the bidders, by entering into the market, either personally or by his agents, or if, with a view of purchasing, he was tempted to undervalue the property in his proceedings respecting the sale." (29 Cal. at p. 36.)
Under Boyd, Karlebach's conduct in arranging to have RSD redeem the shares fell under the proscription against indirect inhibition of competition found in section 9880, subdivision (a), and she otherwise failed to show that her conduct met the statutory exceptions to this proscription located in section 9880 et seq. We therefore conclude that the trial court erred in denying Martin's request to void the sale of the shares.

DISPOSITION
The probate court's order denying appellant's petition to vacate the sale of the RSD shares to RSD is reversed, and the matter is remanded to the probate court for further proceedings in accordance with this opinion. Costs are awarded to appellant.
EPSTEIN, Acting P.J., and HASTINGS, J., concur.
NOTES
[1] Henry Gannett Martin, who was Martin's father and Karlebach's brother, died in 1994.
[2] All further statutory citations are to the Probate Code unless otherwise noted.
[3] Former Code of Civil Procedure section 963, subdivision 3, provided that an appeal could be take from an order "against or in favor of directing the partition, sale, or conveyance of real property." (Code Civ. Proc., § 963, subd. 3 as amended by Stats. 1931, ch. 922, § 1, p. 1924-1925.)
[4] O'Connor also resolves another contention raised by Karlebach, namely, that Martin's appeal is premature because the probate court has not yet found that the sale of the shares injured the estate. However, without requiring a determination of injury to the beneficiary, the court in O'Connor held that the sale should be voided at the beneficiary's request. (57 Cal. at pp. 296-297.)

That such a determination is unnecessary finds further support in Jones v. Hanna (1889) 81 Cal. 507, 22 P. 883. In Jones, the executor of an estate, together with another person, arranged to buy estate property through some third parties, and issued a promissory note to them, but the executor and her partner failed to pay the third parties in full after they made the transaction. (Id. at pp. 507-509, 22 P. 883.) When the third parties sued the executor and her partner on the promissory note, the trial court entered judgment in favor of the third parties, finding that the estate had realized the largest possible profit from the sale. (Id. at pp. 508-509, 22 P. 883.) Our Supreme Court held that the trial court erred, reasoning that the contract at issue was void as a matter of public policy because the underlying acts by the executor were illegal, and that the benefit to the estate was immaterial to the illegality of the agreement. (Id. at pp. 509-510, 22 P. 883.)