[L. A. No. 19270.   In Bank.   July 23, 1946.]

ADOLPH WILLIAM STRUDTHOFF et al., Appellants, v. SYDNEY YATES, as Administrator, etc., et al., Defendants and Respondents; EDITH H. YATES, Cross-complainant and Respondent.

Estate of JOHN D. STRUDTHOFF, Deceased.

William L. Waters for Appellants.

Mize, Kroese & Larsh, R. C. Mize and Stephen F. Gallagher for Respondents.

EDMONDS, J.—The two sons of John D. Strudthoff sued Sydney Yates, the administrator of the estate of their father, and his wife, Edith H. Yates, to impress a trust upon real property and for an accounting. Consolidated with this suit is a petition for revocation of letters of administration, the appointment of a successor administrator and a demand that

Yates be ordered to render a more complete final account of his management of the estate. The principal charge of the heirs is that, pursuant to a fraudulent conspiracy and in violation of section 583 of the Probate Code, Yates transferred certain property of the estate to his wife. Complaint is also made of his asserted failure to account to the estate for certain income from that property.

John D. Strudthoff died testate in 1936, leaving four adult children. At the time of his death he owned a 40-acre orange grove in two parcels, each of which contained 20 acres. The sons' suit is based upon the asserted mismanagement of the estate by Yates whereby this property was conveyed to its creditors and thereby lost to the heirs.

The complaint is in five counts. The first of them alleged that one of the sons and Evelyn, his sister, were appointed administrators of the estate and served as such for three years. They then resigned, and Yates was appointed in their stead. He is the father-in-law of Amelia, also a daughter of Strudthoff. Their resignations, it was charged, were brought about by the false representations of Yates to the heirs that if he were appointed as administrator, he would so manage the groves and the affairs of the estate as to gradually liquidate the outstanding indebtedness, thereby saving the property from foreclosure. He also falsely represented to the heirs, the complaint continued, that he would do this without cost to them because of the family connection and the desire to have them inherit the property free of incumbrance.

In 1939, upon the nomination of the four heirs, Yates was appointed administrator with the will annexed. According to the complaint, Yates and his wife, having familiarized themselves with the affairs of the estate and its property, entered into a conspiracy to defraud the heirs out of their respective interests in the groves by obtaining loans from her and, later, a conveyance to her of 30 acres of the property in satisfaction of those loans. As a part of their plan, the sons pleaded, since the date of his appointment, Yates continually concealed from the plaintiffs all information regarding the administration of the estate, and because of his false promises, they made no investigation of the facts concerning the operation of the orange groves.

Upon information and belief, it was alleged that annually Yates sold the crops of oranges produced from the groves and collected the proceeds therefrom. These amounts, together

with the income from the sale of water produced on the land, at all times during his administration were much more than sufficient to pay all interest, taxes and reasonable operating expenses of the groves. In order to conceal these facts from the court, it was charged, Yates purposely failed to render an annual account as required by law, and rendered no account since the date of his appointment.

Without disclosing the true financial condition of the estate to the court, the sons also asserted, Yates falsely represented that, for the best interest of all concerned, 10 acres of the orange grove should be conveyed to the beneficiary of the deed of trust securing an indebtedness incurred during the administration of the estate. Pursuant to an order of court, the property was conveyed to the creditor notwithstanding the fact that Yates then had, or should have had, on hand money of the estate sufficient to have made a substantial payment upon the incumbrance "and thereby could well have secured the extension of the balance due thereon." In accordance with the fraudulent conspiracy, Yates, "in violation of his duty as administrator, did not take advantage of the right to protect the estate from any threatened foreclosure by filing a petition under . . . the Frazier-Lempke Act, and by such designed neglect fraudulently caused the sacrifice and loss of the ten acres of land and the deed to himself and his wife of the remaining 30 acres."

The complaint then stated facts concerning the conveyance to Mrs. Yates. This deed, said the sons, was also obtained by fraudulently concealing from the court the true financial condition of the estate. Yates falsely represented to the court that it was necessary and for the best interests of the estate to borrow $11,350. The court, in reliance upon the fraudulent representations, made an order authorizing him to obtain the loan from his wife and, as security therefor, to give a note and deed of trust. The estate was not then in need of money and the loan was made for the financial benefit of Yates and his wife as part of the conspiracy to thereafter obtain the 30 acres of land for themselves.

The later history of the loan was then related. In June, 1942, a little more than one year after the note and deed of trust were executed and delivered, Mrs. Yates demanded immediate payment of $11,350 together with an additional $2,500 claimed to have been advanced by her. Upon information and belief, it was alleged, no part of these amounts was

ever paid to or received by the estate, but they were pretended loans for the consummation of the fraudulent conspiracy. Yet Yates petitioned the court for an order authorizing him to accept a proposed compromise offered by his wife whereby she agreed to pay the estate $1,000 and cancel the indebtedness in consideration of the conveyance to her of the 30 acres of land. In this petition, Yates falsely represented to the court that the property was worth "not to exceed $30,000" and the acceptance of the offer of compromise would be to the best interest of the estate.

When Yates filed his petition, the complaint continued, the orange crop on the 30 acres had fully matured and was worth about $22,000. Yates had that amount on hand when he made the conveyance, and the market value of the land was then more than $45,000, as he well knew, but he concealed all of these facts from the court. During the summer of 1942, Yates and his wife could have sold the land for $1,500 an acre, but they took the groves off the market and refused to consider any offer between June and October, 1942, when they obtained title to the land. Its worth at the date of the conveyance was $47,500.

Other allegations in connection with the conveyance to Mrs. Yates were that the petition for authority to compromise her indebtedness did not disclose her relationship to the administrator and the concealment was intentionally made for fraudulent purposes. The cause of action concluded with the demand for a declaratory judgment that 20 acres of the land conveyed to Mrs. Yates is held by her as trustee for the plaintiffs.

The other counts of the complaint incorporated by reference substantially all of the allegations of the first cause of action. By the second and fourth counts, the plaintiffs sought an accounting of oranges assertedly sold by Yates. The purpose of the third count was to obtain a declaratory judgment that Mrs. Yates holds 10 acres of the land conveyed to her in trust for the plaintiffs. In the fifth count, the plaintiffs pleaded that by reason of the neglect and mismanagement of Yates, damages in the sum of $20,000 have been sustained.

The separate demurrers of Yates and his wife were overruled as to the first four counts of the complaint, but sustained as to the fifth one, with leave to amend. Upon failure to amend, the fifth count was dismissed.

By answer, Yates denied generally, and sometimes specifically, all of the material allegations of the complaint. As a

further and separate defense to the first four counts, he alleged that in October, 1940, the plaintiffs assigned to him all of their interest in the estate of John D. Strudthoff and, since that time, they have had no rights in it. Also, in defense of each of the first four causes of action, Yates pleaded that during all of the time he acted as administrator, the assets of the estate were heavily incumbered and there was insufficient money to finance the production of crops and pay the costs of administration. At all times, he asserted, he acted upon the advice of competent counsel.

So far as the issues now before the court are concerned, the answer of Edith Yates was the same as that of her husband. By cross-complaint, she sued to quiet title against the four children of John D. Strudthoff and certain defendants sued under fictitious names. Adolph and Arthur Strudthoff answered the cross-complaint, denying most of its allegations but admitting that they claim an interest in the property. The cross-defendants Evelyn Strudthoff and Amelia Yates disclaimed any interest in the property.

At the time the complaint in equity was filed, Adolph Strudthoff also petitioned for revocation of Yates' letters of administration and the appointment of a successor administrator, stating, as grounds therefor, neglect of the estate and the refusal to account annually as required by law. The assertedly false representations made to the court in regard to the compromise with Mrs. Yates, their fraudulent conspiracy, his failure to file a petition under the Frazier-Lempke Act, and other allegations of the complaint were also pleaded. The petitioner prayed that the letters of administration with the will annexed, which had been granted to Yates be revoked, that petitioner be appointed his successor, and that Yates be required to render an account and report.

In his answer to this petition Yates denied all of the material allegations. Referring to the suit in equity, he asserted that as the issues there presented by the sons of Strudthoff were the same as those tendered by the petition for revocation of letters, the two proceedings should be consolidated. This motion was granted.

The evidence presented in support of the positions of the respective parties shows that about two years after the son and daughter of Strudthoff commenced their administration of his estate, Southern County Bank, a creditor, filed a petition asking the court to remove them upon the ground that

they were neglecting the management of the orange grove. Unquestionably, the property presented many difficulties. It was heavily incumbered and required a considerable outlay for care and carrying charges. The final account of these administrators, which was settled and allowed by the court, showed that the assets of the estate consisted of the real estate, appraised at $75,000, and $85.78 in cash. The total indebtedness of the estate was said to be $42,662.29, and the administrators stated that most of the obligations were delinquent. They also reported that John D. Strudthoff had filed a petition under section 75-S of the Federal Bankruptcy Act, that a composition of creditors had been made, and that the terms of the composition were in default.

Shortly after his appointment, Yates, upon the advice of counsel, entered into contracts with his wife for the care of the orange groves owned by the Strudthoff estate. Mrs. Yates owned an adjoining grove and she had the necessary ranch equipment to do the work. She agreed, by the first of these contracts, to cultivate, irrigate, fertilize, and care for the 40 acres during the crop year 1939 for the sum of $4,000. The contract for 1940 was at the rate of $4,500, and in the following year the price was raised to $5,250. All of them were subject to the condition that the work be done to the satisfaction of Southern County Bank and Federal Land Bank, creditors of the estate. None of these contracts was approved by the court. However, an expert testified that the charges were reasonable and that under the management of Yates the groves greatly improved.

At the time of his death, John D. Strudthoff was indebted to W. C. Endicott for money borrowed from him. This loan was secured by a deed of trust to a portion of the Strudthoff land. In October, 1939, the property, which comprised 10 acres, was deeded to Endicott for $250 and a satisfaction of the indebtedness, then amounting to more than $11,000, pursuant to an offer of compromise which, by order of the probate court, the administrator was authorized to accept.

In December, 1939, Federal Land Bank, holder of a trust deed as security for a loan of over $11,000, demanded that past due payments be brought up to date. This notice stated that unless payment of the delinquent indebtedness in full was received within 30 days, foreclosure proceedings would be commenced.

A little more than a year later, the administrator petitioned

the court for an order authorizing him to borrow from Edith H. Yates, his wife, $11,350 and additional amounts not exceeding $2,500, to be repaid within one year, and to be secured by a trust deed and a crop mortgage, subject to prior incumbrances of record. This petition stated that the proceeds of the loan were to be used for the purpose of paying off certain delinquent indebtedness of the estate, including amounts due to the Federal Land Bank, Southern County Bank, Anna Strudthoff and the administrator's attorneys. At that time, the estate also owed Mrs. Yates $13,750 for care of the orchards for three years. An order was made in accordance with the petition and the estate obtained the money.

In April, 1942, Yates filed a petition for authority to compromise the indebtedness due to his wife. The petition recited that the principal and interest of the loan were past due, that she had demanded payment, that the estate was unable to pay any portion of the debt, and that she agreed to satisfy the obligation in full and to pay the estate $1,000 in consideration of a conveyance to her of the 30 acres of land, subject to the prior incumbrances. In connection with a statement of the amount of the senior liens, it was alleged that the value of the property was then only $30,000.

Upon a hearing of this petition, the court made its order authorizing the compromise. Shortly afterward, the court set that order aside because of a discrepancy in the description of the land. According to the testimony of Mrs. Yates, the second order of compromise was made after she had paid the consideration of $1,000 and received the administrator's deeds. At that time, she stated, the indebtedness of the estate to her was about $39,500.

When called as a witness, Arthur Strudthoff, for the most part, denied any knowledge of the facts alleged in the complaint. He did not know the income of the orange groves, the amount of the incumbrances, nor the amount of interest and principal due each year. He did not know that there were crop mortgages on the groves. He had no information as to the amount of care given the groves during the Yates administration, nor the reasonable value of that care. Apparently he based his charge of fraudulent conspiracy upon the fact that Yates told him "everything was all right." He also quoted the statement of a neighbor, who apparently knew nothing of the difficulties of the estate, to the effect that the

income from the groves should have been sufficient to pay all interest, taxes and reasonable operating expenses and leave a substantial cash balance. However, he testified that, in his opinion, in June, 1942, the reasonable market value of the 30 acres was $45,000. But, contrary to his complaint, he declared that the compromise with Endicott was for the best interests of the estate. The testimony of Adolph Strudthoff, the other plaintiff, added nothing to that of his brother.

Concerning the compromise of the indebtedness due to Mrs. Yates, the attorney for the administrator testified in the present suit concerning the representations which had been made by him in support of the petition to compromise the claim of Mrs. Yates. At that time, he stated, he told the judge the amount due her was in excess of the value of the property, and for that reason, the compromise was ''for the best interest of the estate.'' He also then expressed the opinion that the value of the property was $30,000.

There is no evidence showing that Yates had any special interest in the property of the estate prior to his appointment as administrator. According to the testimony, the contracts for the care of the grove were reasonable and were performed to the satisfaction of the creditors. Nor is there any proof that the income of the estate was sufficient to meet the delinquencies. On the contrary, considering the entire history of the administration, from the time the son and daughter acted as administrators until the compromise of the indebtedness to Mrs. Yates, it appears quite conclusively that the income of the estate was insufficient to meet the pressing obligations. Indeed, the record shows that all of the proceeds from the sales of oranges were taken by the crop mortgagees.

The evidence also tends to show that Yates, in good faith, attempted to sell the property at a reasonable price, but was unable to do so. The testimony of real estate appraisers as to the value of the 30 acres ranged from $28,500 to $50,290, but the record also discloses that, at the time the compromise was approved, the indebtedness against the property amounted to $39,550. And there is no evidence whatever to support the charge that material facts were not disclosed to the court.

Yates testified that continually he tried to explain the whole matter to the Strudthoff sons, including the fact that ''Mrs. Yates was foreclosing.'' He also said that, at the time the indebtedness to Mrs. Yates was due, he asked Adolph Strudthoff to endeavor to raise the money to pay it. Moreover, ac-

cording to his testimony, he even offered to pay an attorney to be chosen by Arthur and Adolph Strudthoff to check the proceedings in the estate, particularly in regard to the threatened foreclosure.

Upon this evidence, the court found that the only reports made by Yates concerning the condition of the estate are included in certain petitions filed in 1939 through 1942 and the final account; that the appraised value of the 40 acres in 1936 was $75,000; that it is not true that since 1936 the groves produced about 12,000 to 15,000 boxes of oranges annually; nor that either Yates or his wife, prior to his appointment as administrator became interested in or familiarized themselves with the affairs of the estate or of the orange groves.

Further findings are that Yates and his wife did not enter into a conspiracy to defraud the Strudthoff sons, or any of the heirs, that the defendants did not by any misrepresentation or fraud secure either the order authorizing the loans by Mrs. Yates or the one approving the compromise with her, and that Yates was not appointed administrator in reliance upon any representations or promises made by him.

Concerning the administration of the estate by Yates, the court concluded that the net returns from the sale of oranges, and for water sold, were not sufficient to pay the pressing charges of the estate. Yates did not purposely fail to render an annual account in order to conceal facts, and the conveyance to Endicott was for the best interests of the estate. Neither the relationship of Edith Yates and the administrator, nor the financial condition of the estate was concealed from the court and it was necessary and for the best interests of the estate to secure the loan from her. The full amount of the principal of the trust deed note was paid to the estate; the loan was not made for the financial benefit of the defendants, or as part of any conspiracy to obtain title to the orange groves. The defendants made no petition, nor did they procure any order or compromise or execute any deed upon any misrepresentation, fraud, or fraudulent concealment of any facts or under any conspiracy to defraud the plaintiffs. Finally, the court found that the plaintiffs have sustained no damage by reason of any acts of defendants. However, it made no finding in regard to the assignments pleaded by Yates in defense of the action.

As conclusions of law from the findings of fact, the court determined that Edith Yates is the owner, as her separate

property, of the 30 acres of land in controversy, the cross-defendants having no interest therein. Upon the issues presented by the petition in the probate proceeding, the court decreed that there is no property of any kind belonging to the estate, that the final account filed by Yates included all of the receipts and disbursements of the administrator and is full and correct. Accordingly, his account, and also his petition for termination of further proceedings and for his discharge as administrator pursuant to provisions of section 1068 of the Probate Code were allowed, settled and granted. The petition for revocation of letters of administration was denied.

As grounds for attacking the judgment rendered in accordance with these conclusions, the sons contend that, because under section 583 of the Probate Code, the court exceeded its authority in approving the compromise with Mrs. Yates, the administrator's deed to his wife is void. For that reason, they argue, the order is subject to collateral attack by a suit in equity. They also assert that the money loaned to the estate was the community property of the administrator and his wife. Furthermore, the findings do not support the judgment since the sale was fraudulent in fact, and there is no finding that the administrator was not interested in the purchase of the estate property. Another point relied upon is the amount of indebtedness canceled as compared with the average valuation the expert witnesses placed upon the 30 acres and the price at which the groves were listed by Yates.

The sons also urge that the final account filed by Yates should not have been entertained or settled because it omits all crop receipts and numerous other items and was submitted in accordance with the procedure specified for the termination of administration of an estate having no property. If considered as an account submitted in the usual course of administration, they say that it does not meet statutory requirements because no supporting vouchers were filed.

A charge of prejudicial error is based upon the trial judge's oral opinion which, it is claimed, discloses that he did not base his findings as to value upon the evidence in the case. They also rely, as a ground for reversal, upon the admission, over objection, of a conversation between the attorney for the administrator and a real estate broker, in regard to an extension of a listing of the estate property. Lastly, the sons argue that the court erroneously limited the cross-examination of Mrs. Yates concerning records of the amount of money paid out for the care of the groves.

■ Section 583 of the Probate Code, recast from sections 1576 and 1617 of the Code of Civil Procedure, provides: "No executor or administrator may purchase any property of the estate, or any claim against the estate, directly or indirectly, nor be interested in any such purchase; and if he pays any claim for less than its full amount he may have credit in his accounts only for the amount actually paid." This statute is a codification of the well established principle that a trustee may not deal with himself, nor place himself in a position antagonistic to the interests of the *cestui que trust*. (*Baker* v. *Miller*, 190 Cal. 263, 269 [212 P. 11]; *Jones* v. *Hanna*, 81 Cal. 507, 510 [22 P. 883]; *O'Connor* v. *Flynn*, 57 Cal. 293, 295; *U. S. Fidelity & Guaranty Co.* v. *Postel*, 64 Cal.App.2d 567, 573 [149 P.2d 183]; 34 C.J.S. 563.) However, the foreclosure by an administrator of a mortgage made in his favor to secure the loan of money borrowed by the estate from him, with the approval of the probate court, does not come within the legislative prohibition.

The statute "is not even remotely applicable" to such a situation, said the court in *Corporation of America* v. *Bank of America*, 7 Cal.App.2d 470, 478 [46 P.2d 262]. In that case, the transferee of Bank of America sued to foreclose a mortgage which had been given to secure the payment of a note evidencing a loan made by the bank to the estate of which it was the executor. The money was borrowed and the mortgage executed and delivered by the bank to itself in accordance with an order of the probate court approving the transaction. In affirming the decree of foreclosure and order of sale, the charge of invalidity made against the decree of foreclosure and order of sale upon the ground that the mortgage violated section 1576 of the Code of Civil Procedure was answered as follows: "Certainly the execution of the mortgage did not amount to a sale of the property described in the mortgage (*Murphy* v. *Farmers' etc. Bank*, 131 Cal. 115, 120 [63 P. 368, 371]) and we know of no statute or rule of law which prohibits an executor or administrator from advancing to the estate which he represents money to be used in the payment of pressing claims against the estate or in payment of expenses of administration." (P. 478.)

The plaintiffs principally rely upon *O'Connor* v. *Flynn*, *supra*; *Jones* v. *Hanna*, *supra*; *Santos* v. *Santos*, 32 Cal.App. 2d 62 [89 P.2d 164]; and *Burton* v. *Compton*, 50 Okla. 365 [150 P. 1080]. In the first of these cases, real property of the

estate was sold under order of court, but prior to the report and confirmation of sale the executor bought the land from the purchaser. The facts concerning the agreement between the purchaser and the executor were not made known at the time of the confirmation of the sale and this court declared that the executor held the land as trustee for the heirs. In *Jones* v. *Hanna, supra,* the executrix entered into an agreement with third persons whereby they should buy on commission certain estate property at a probate sale for the executrix's account, risk and personal profit. The sale was set aside as void under the statute which is now embodied in section 583 of the Probate Code. The plaintiff in the Santos case was the administratrix of her husband's estate. The administratrix and the defendant, with whom she was living under the belief that they were legally married, bought certain real property at probate sale and the transaction was held to be voidable. *Burton* v. *Compton, supra,* concerned the sale of property owned by a minor. The wife of the minor's guardian was the purchaser and the court set aside the deed to her as void notwithstanding the defense of lack of fraud and adequacy of consideration. None of these cases is authority in the present controversy; each of them concerned a sale of property, a situation quite different from the foreclosure of a lien to secure the loan of money borrowed by an estate.

The order approving the compromise of the indebtedness of the Strudthoff estate to Mrs. Yates was, in effect, a decree of foreclosure and as Yates himself might have made the loan to the estate and later foreclosed the lien to secure its payment without violating section 583 of the Probate Code, the question as to whether the money loaned by Mrs. Yates was community or her separate property is quite immaterial.

Moreover, as no appeal was taken from the order approving the compromise, that determination became final. (*Estate of Lucas,* 23 Cal.2d 454, 463 [144 P.2d 340].) Of course, it is subject to attack upon the ground of extrinsic fraud, but the facts pleaded by the Strudthoff sons do not come within that category. They charged intrinsic fraud, in that Yates and his wife procured the offer of compromise upon the misrepresentation to the probate court of material facts and the fraudulent concealment of information in connection with the value of the orange groves and the financial condition of the estate. But the finding of the trial court upon these issues is that there was neither fraudulent repre-

sentation nor concealment, and its conclusions are fully supported by substantial evidence.

■ Yates answers the criticism leveled against his final account and petition for termination of the administration proceedings with the statement that an administrator is chargeable only with the estate which comes into his possession. His testimony and other evidence shows that some substantial amounts were realized each year from the sales of oranges, but the total income from crops and other sources was very much less than the sums pleaded by the plaintiffs. The petition for compromise filed by Yates would have been more satisfactory had it included some statement of the crop and water sales and the disposition of the money. But from the evidence in the present case, it appears, without conflict, that all of the income from the oranges was paid by the packing house directly to the crop mortgagees and did not come into the possession of the administrator. And in support of the order approving the compromise, it must be assumed that all of these facts were fully disclosed to the probate court at the time of the hearing. Certainly the order, which recites that the "compromise appears to be just and for the best interests of the estate," would not have been made without any inquiry as to the financial ability of the estate to meet the overdue indebtedness.

■ The evidence concerning the payments of the crop money also supports the present judgment settling the administrator's final account and granting his petition for termination of the probate proceedings. The account shows receipts totaling $1,566.28 from sources other than crops or water sales and justifies the implied determination of the court that no other income was received by the administrator.

All but $300 of the $1,500 in credits claimed by the administrator in his final account were for attorney's fees and title charges. The plaintiffs do not assert that the payments were not in fact made, and, under these circumstances, the failure to furnish supporting vouchers for them does not amount to prejudicial error justifying a reversal.

■ The long established rule that the opinion of the trial judge cannot be substituted for nor used to modify the findings or judgment (*De Cou* v. *Howell,* 190 Cal. 741, 751 [214 P. 444]) is a complete answer to the plaintiffs' contention concerning the determination as to the value of the orange groves. "The findings of fact . . . must be taken as embody-

ing the conclusions of the trial court on all questions of fact submitted to it for decision." (*Goldner* v. *Spencer,* 163 Cal. 317, 320 [125 P. 347].) "No antecedent expression of the judge, whether casual or cast in the form of an opinion, can in any way restrict his absolute power to declare his final conclusion . . . by filing the 'decision' (findings of fact and conclusions of law) provided for by . . . the Code of Civil Procedure." (*Scholle* v. *Finnell,* 173 Cal. 372, 376 [159 P. 1179].) ▉ And assuming that the testimony of the administrator's attorney in regard to a conversation concerning the sale of the property should not have been received in evidence, the error is of no consequence. The only purpose of that testimony was to rebut the charge of intrinsic fraud which, if proved, would not justify equitable relief in the present suit. The ruling limiting the cross-examination of Mrs. Yates falls within the same category.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.