[Civ. No. 19714. Second Dist., Div. One. Nov. 24, 1953.]

J. M. MATHES, Respondent, v. CITY OF LONG BEACH et al., Appellants.

Irving M. Smith, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Appellants.

Roscoe R. Hess for Respondent.

DRAPEAU, J.—Plaintiff contractor was the successful bidder for the construction of an ornamental lighting system on Santa Fe Avenue in the city of Long Beach. The work was planned by the city, and plaintiff bid for it, in accordance with the provisions of the Improvement Act of 1911 (Sts. & Hy. Code, § 5100 et seq.)

The contract was executed by the contractor and by the city. The contractor furnished to the city the bonds and contracts of indemnity called for by the contract. Prior to the time fixed for commencement of his work, the contractor brought this action to determine whether the contract was or was not valid. This action is authorized by section 5266 of said code.

In his complaint the contractor questioned the validity of the contract and of the proceedings leading up to it, in 19 particulars.

After the case was submitted for decision, the trial judge prepared a memorandum opinion evidencing a prodigious amount of work and research. Subject, of course, to its legal limitations on review (*Strudthoff* v. *Yates,* 28 Cal.2d 602 [170 P.2d 873] ; *Southern Calif. Jockey Club, Inc.* v. *California Horse Racing Board,* 36 Cal.2d 167 [223 P.2d 1]), the opinion has been of great help to this court.

In his memorandum opinion the trial judge directed findings and judgment for the city on all of the issues presented. After hearing on objections to the proposed findings, the judge reiterated his original conclusions, with one exception.

Inasmuch as the decision in this case must turn upon that exception, the finding is as follows:

"This Court further finds that none of the matters alleged or questions of law raised by Paragraph XV of the said complaint in any wise affect the validity of the proceedings described in Paragraphs IV to XIV inclusive of the complaint on file herein, and the Court therefore finds that all of the allegations of Paragraph XV as to matters of fact therein alleged are untrue, except the Court finds that it is true that there is no authority under the Improvement Act of 1911, or otherwise, for the inclusion in the contract described in Paragraph XIV of the complaint, a true copy of which is annexed to the answer of the defendants, City of Long Beach and James Kincaid and marked 'Exhibit A' of the covenants and conditions contained in said contract and which are set forth and described in subparagraph 8 of said Paragraph XV of said complaint, and which constitutes Paragraph XVII of said contract, and the Court further finds that the inclusion of said paragraph as a part of said contract imposed upon the contractor a burden unauthorized by statute and imposed upon the owners of property within the assessment district affected by the proceedings described in the ordinance, a burden not authorized by law, in that the imposition of such burden by the terms of said Paragraph XVII of said contract, the property in said assessment district might be subjected to charges and assessments without receiving any benefit from the work done and without the completion of the work described in the contract. The Court further finds that none of the owners of property within the assessment district affected by the proceedings described in

the complaint on file herein were put upon notice that said Paragraph XVII would be included in said contract, and that no property owners ever had an opportunity to object to the inclusion of said provision in said contract.''

From the judgment that the contract was void the city appeals.

Inasmuch as this decision must also turn upon the clause, because of which the whole contract was adjudged and declared to be void, it also is quoted verbatim.

"17. COORDINATION WITH GOVERNMENTAL ORDERS. The parties understand that, pursuant to Federal regulations, the improvement contemplated hereunder may be stopped at any time. Contractor agrees that in the event such work is terminated, pursuant to any such order, the Contractor will accept as the full and complete compensation under the contract such an amount of money as will equal the total proportion of the items of the work theretofore completed by the Contractor, at the reasonable value therefor, together with the estimated fractional parts of finished work theretofore performed on uncompleted items at the reasonable value thereof. In the event the work is so terminated, or halted, the Director of Public Service, after consultation with the Contractor, shall estimate such fractional parts of finished work on uncompleted items and the reasonable value thereof based upon the unit prices herein, and the decision of the Director of Public Service shall be final and conclusive thereon.

"In the event the Contractor is prevented, in any manner, from a strict compliance with the plans and specifications herein referred to, due directly or indirectly to any Federal law, valid rule or regulations, as an incident to any national emergency, in addition to all other rights and remedies reserved to the parties, the City may, by resolution of the City Council, suspend performance under the contract until the cause of disability is removed, renegotiate the contract by extending the time for performance, or by making changes in the character of the work or materials required, or, without liability upon either party, terminate the contract.''

It is conceded by all that this is a case of first impression. Neither the industry of counsel, nor of this court, nor of the superior court, has brought to light any case reasonably in point.

Certain basic rules may, however, be formulated from the statute and case law. Street improvement by assessment pro-

ceedings is a well-known and well-recognized function of municipalities. The Act of 1911 sets up a procedure whereby the cost of the improvement may be legally assessed against the property benefited by it. These proceedings must substantially comply with every step specified in, and required by the law. For the final result is to charge the cost of the improvement to every property owner in the district benefited, and to fix a lien upon the property within the district.

However, absolute literal compliance with the law is not required. (*Gustine City* v. *Silveira*, 67 Cal.App.2d 403 [154 P.2d 474].) ▄▄ When property owners have had due notice and an opportunity to be heard by the legislative body of the municipality, substantial compliance with the law is sufficient, liberal construction should be given to the proceedings, and all doubts resolved in favor of their validity. (Sts. & Hy. Code, § 5271; *Hannon* v. *Madden*, 214 Cal. 251 [5 P.2d 4]; *Rice* v. *Hanrahan Co.*, 210 Cal. 625 [293 P. 57]; *Woodill* v. *City of Glendale*, 208 Cal. 564 [282 P. 797].)

The clause here under consideration, defining the rights of the parties if the federal government should stop the work, would seem to be similar to clauses in contracts excusing performance because of natural calamities. These covenants, sometimes loosely called acts of God, are familiar in the law of contracts.

▄▄ " 'Force majeure,' or the Latin expression '*vis major*,' is not necessarily limited to the equivalent of an act of God. The test is whether under the particular circumstances there was such an insuperable interference occurring without the party's intervention as could not have been prevented by the exercise of prudence, diligence and care." (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, 29 Cal.2d 228, 238 [174 P.2d 441].)

▄▄ It was entirely proper for the governing body of the city of Long Beach and for the contractor to provide what would be done in the event the federal government should stop the work. Instead of impinging upon, this clause recognized and protected substantial rights of the city, the property owners affected, and the contractor. Therefore, this court has come to the conclusion that it was error to hold that this clause, measured by the provisions of the Improvement Act of 1911, imposed upon the owners within the assessment district a burden not authorized by law.

This conclusion is supported by sections 4410, 4411 and 4412 of the Government Code, which recognize the possibility of a stoppage of public work by order or proclamation of the

President of the United States, and provide that in such circumstances the contracting parties for public works may agree for the payment of compensation for work done before it is stopped by an overriding power.

This then brings us to the other 18 asserted defects in the proceedings leading up to the contract. Each of them was given careful consideration by the trial court. The findings were that none of them affected the validity of the contract.

It would prolong this opinion to unreasonable length to state and discuss each objection separately. Suffice it to say that, tried by the foregoing rules, this court agrees with the findings of the trial court as to all the objections.

Counsel for the contractor suggests that reversing the judgment without remanding the case to the superior court for further trial would inflict extreme hardship upon the contractor. This because of increases in wages and costs of material since the contract was entered into. While such increases have unquestionably occurred, this court can see no way by which equitable relief could be extended to the contractor. In view of the legislative mandate for speedy termination of this type of litigation nothing can be gained for anyone by sending the case back for trial upon any of the issues. (Sts. & Hy. Code, § 5270.)

The judgment is reversed, with directions to the superior court to enter judgment for the city of Long Beach.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied December 14, 1953.