[Civ. No. 10289. Second Appellate District, Division One.—July 23, 1936.]

CARRIE BORDEN MILLER, as Executrix, etc., Respondent, v. CALIFORNIA TRUST COMPANY (a Corporation), as Executor, etc., Appellant.

Swanwick, Donnelly & Proudfit and Tom W. Henderson for Appellant.

Bauer, Macdonald, Schultheis & Pettit and Thomas H. McGovern for Respondent.

DESMOND, J., *pro tem.*—The California Trust Company is executor of the will and estate of Russell H. Ballard, deceased, and as such appeals from a judgment awarded in a jury-waived trial, to Carrie Borden Miller, as executrix, of the estate of John B. Miller. It is claimed that the court erred in ruling upon matters of law incidental to the questions involved; also, that certain findings are not supported by the evidence before the court.

Messrs. Ballard and Miller were closely associated in business for many years, both being officers of one of the major industrial corporations of southern California. During the latter part of 1931, Mr. Ballard received from Mr. Miller on several occasions various blocks of stock in different companies. On January 15, 1932, he signed and delivered to Mr. Miller a document reading as follows:

"Los Angeles, California, January 15, 1932.

"On or before January 15, 1933, after date, for value received, I promise to pay to John B. Miller, or order, the sum of One Hundred Sixty One Thousand Seven Hundred Dollars ($161,700.00), with interest at the rate of six percent (6%) per annum from and after maturity.

"(Signed) R. H. BALLARD.

"This note is secured by an agreement dated January 15, 1932, between R. H. Ballard, Party of the First Part, and John B. Miller, Party of the Second Part."

At the same time Mr. Ballard entered into an agreement in writing with Mr. Miller, dated January 15, 1932, acknowledging his receipt of the various items of stock which Mr. Miller had delivered to him in the preceding half-year, and containing the following language:

"It is understood and agreed that said stock is loaned to Party of the First Part by Party of the Second Part for a period of one year from January 15, 1932, and that Party of the First Part shall have the right to pledge said stock, or

any part thereof, on loans which he may now have or make during said one year period; that coincident herewith, Party of the First Part has made, executed and delivered his promissory note to Party of the Second Part in the sum of One Hundred Sixty One Thousand Seven Hundred Dollars ($161,700.00), payable one year from January 15, 1932, with interest thereon at the rate of six percent (6%) per annum from maturity.

"It is understood and agreed that upon the return of the above listed stock to Party of the Second Part, said note shall be cancelled; that as further security for the return of said stock and the payment of said note, Party of the First Part does hereby assign, as security to Party of the Second Part, all his right, title and interest in and to that certain Employee's Stock Contract between Party of the First Part and Southern California Edison Company, Ltd., dated the 14th day of April, 1928, said assignment being subject to a prior assignment to secure a promissory note in favor of May S. Ballard."

Both Mr. Miller and Mr. Ballard died in the year 1932, and within the statutory period allowed for presentation of claims, this respondent, as executrix of the Miller estate, presented to appellant, as executor of the Ballard estate, a claim for the return of all the stocks which Mr. Ballard had receipted for, but "in the event of the inability or refusal of the above entitled estate to return said stocks, then and in such event only, claimant presents this claim in the alternative, for the principal sum of One Hundred Sixty-One Thousand Seven Hundred Dollars ($161,700.00), as in said promissory note provided, representing the market value of the aforesaid stocks at the time of the loan thereof, with interest thereon at the rate of six per cent (6%) per annum from and after the 15th day of January, 1933, less the sum of Seventeen Hundred Twenty-two and 88/100 Dollars ($1,722.88), which has been credited upon said promissory note, as hereinabove set forth."

Mr. Ballard had pledged as security for loans the stocks listed in his agreement with Mr. Miller, and his executor therefore could not and did not respond to the claim for delivery of them. Instead a petition was filed by appellant praying "that a reference may be had in this Court, under Section 718 of the Probate Code, to determine in what

amount said claim should be allowed", the executor's doubt as to the correctness of the claim as filed being expressed in the petition. Respondent consented in writing to the reference. The matter, however, was not referred to a referee; instead, the judge sitting in probate conducted a hearing and made an·"Order Allowing Claim in Part and Rejecting Balance", by which allowance was made in the sum of $87,282 (which the court found to be the value of the stocks on January 15, 1933, "the day upon which said Russell Henry Ballard agreed to return the same") together with interest at 7 per cent per annum from January 15, 1933. This same order rejected the claim as to the balance thereof, and made provision that in the event said stocks or any part thereof should come into the possession of California Trust Company "and it is possible to return the same to said claimant, the same shall be returned to her and such return shall fully satisfy and discharge said claim to the extent of the value, on the said 15th day of January, 1933, of the stocks so returned". Although the claim was for the amount of $161,700 minus the sum of $1,722.88, which had been collected, under the agreement of January 15, 1932, from the assigned interest in Mr. Ballard's stock contract with Southern California Edison Company, the order of the probate court failed to credit the Ballard estate with any portion of that payment, merely allowing the claim for the value of all the stocks as established on January 15, 1933. However, in the suit which gives rise to this appeal, filed by the Miller estate shortly after the order of allowance and rejection was made, credit was given for the $1,722.88 payment, the plaintiff praying "for judgment allowing the rejected portion of said claim in the sum of $72,695.12". Otherwise, if the payment under the stock contract assignment were ignored, the claim as to principal would have been for $74,418, the difference between $161,700 and $87,282, the amount allowed by the probate court. It will be noticed that this suit, in itself, is a recognition of the validity of the probate order as to the allowed portion of the claim and a suit to recover the unpaid balance, as upon the ordinary rejected claim.

     ■    Appellant contends that this matter has already been litigated adversely to respondent, by means of the reference of doubtful claim and the order of the probate court

thereon; therefore, that the trial court erred in failing to find that such order was *res judicata,* and binding on the court. The basis of this argument lies in certain language appearing in section 718 of the Probate Code, under which the reference of the Miller estate claim was obtained. In that section appears the following sentence: "The court may remove the referee, appoint another in his place, set aside or confirm his report, and adjudge costs, as in actions against executors or administrators, *and the judgment of the court thereon shall be as valid and effectual, in all respects, as if the same had been rendered in a suit commenced by ordinary process;* but the report of the referee, if confirmed, merely establishes or rejects the claim, the same as if it had been allowed or rejected by the executor or administrator and judge."

We have italicized here the passage upon which appellant rests its claim of *res judicata,* arguing at the same time that the order of the probate court was an appealable order from which no appeal has been taken; therefore that the order now constitutes a final judgment.

■ As appellant points out, section 1240 of the Probate Code, treating of "Appealable Orders" includes, as such, an order "directing or allowing the payment of a debt, claim, legacy or attorney's fee". But we note a distinction between an order *directing payment or allowing payment of* a claim and an order of the court merely *approving* or *"allowing"* the claim. We believe that the order which is appealable under this section is an order directing or allowing *payment* of a claim which has already been "allowed". It may be remarked also that in the instant case a claim was rejected as to approximately 45 per cent of its amount, and this is a suit to recover the rejected portion brought in conformity with section 714 of the Probate Code (formerly section 1498 of the Code of Civil Procedure). There is no provision in section 1240 of the Probate Code permitting an appeal from an order rejecting a claim in whole or in part, and the Supreme Court has said: "Where, as here, there has been a partial rejection of the claim, the only recourse of the dissatisfied creditor is a suit. (Code Civ. Proc., sec. 1498.)" (*Estate of Bette,* 171 Cal. 583, 587 [153 Pac. 949].)

Returning now to consideration of the quoted sentence of section 718 of the Probate Code, respondent in her turn directs our attention to the concluding language of this section, *"but* the report of the referee, if confirmed, *merely* establishes or rejects the claim, the same as if it had been allowed or rejected by the executor or administrator and judge", and insists that the confirmed finding of a referee upon a disputed claim merely classifies it as one that may be sued upon, if rejected, within the time provided by the statute. We accept this view, for manifestly that was the intention of the legislature clearly indicated by the insertion of the words "but" and "merely" (which we have emphasized above), in the final sentence of the single section, 718 of the Probate Code, which combines two passages that formerly appeared in the Code of Civil Procedure; the italicized portion, in section 1508, and the concluding language, without the "but" and "merely", in section 1507.

The learned trial judge, in his memorandum of opinion, filed upon rendering decision, points out that any apparent inconsistency between the two passages disappears upon considering that the first, establishing the validity of the judgment (in this case, the "Order Allowing Claim in Part and Rejecting Balance"), means that as to the claim allowed, whether the whole or a portion thereof, no question can afterward be raised by the heirs, or to put it in his words, "I do not believe the provision in question relates to the subject of rejected claims, but that it relates only to the status of claims established in whole or in part and was intended to declare only the rights of a judgment creditor against an estate." He calls attention to the fact that under section 1504 of the Code of Civil Procedure, in effect prior to the adoption of the Probate Code in 1931, claims established by judgment were on the same basis as those allowed by the representative of the estate and the probate judge, and, like them, were subject to contest by the heirs until approved in an account; whereas now under section 730 of the Probate Code, a final judgment against an executor or administrator upon a claim for money "conclusively establishes the validity of the claim for the amount of the judgment". Turning to section 927 of the Probate Code, we find that upon the hearing of an account "All matters, including allowed claims not passed upon on the settlement

of any former account *and not reduced to judgment,* may be contested for cause shown.'' (Italics ours.) The trial judge believed that the language of section 1508 of the Code of Civil Procedure, providing that the judgment of the court under a reference and report on a doubtful claim should be as valid and effectual, in all respects, as if the same had been rendered in a suit commenced by ordinary process, had relation to the effect of a judgment as declared by section 1504 of the Code of Civil Procedure, that is, that it established it as an allowed claim, subject, however, to contest, by heirs. And he believed that in the same way section 718 of the Probate Code has reference to the effect of a judgment as declared by section 730 of the Probate Code, namely, a judgment not open to contest by heirs. Under this interpretation of the code sections, both portions of the concluding sentence of section 718 of the Probate Code are harmonized, and still the claimant has a right to sue for the rejected portion of his claim. We are satisfied that he had that right before 1931 and that he certainly has it now, therefore, no error arose, in our opinion, in the court's ruling against the claim of *res judicata.*

■ Appellant seeks to set aside the judgment on the additional ground that the giving and receipt of the promissory note and the signing of the agreement on January 15, 1932, constituted a contract fixing in anticipation the damage to be paid for its breach, and void to an extent under section 1670 of the Civil Code because the actual damage in such a case would not be ''impracticable or extremely difficult to fix''. (See sec. 1671, Civ. Code.) Respondent, however, contends that there was nothing in the way of liquidated damages in the agreement between Messrs. Miller and Ballard, but that it was a contract permitting payment in either of two ways, at the option of Mr. Ballard, either by the return of the stock or payment of the amount which was its value on the day he received it. The agreement by its terms gave Mr. Ballard the right to pledge the stock on loans and, examining the instrument and note together, we cannot say he was under any obligation to return the stock. If it had doubled or trebled in value he might have paid the note in cash and kept the stock, and no breach could have been charged against him. Since liquidated damages are fixed for breach of a contract and since no breach arose

in this case by failure to return the stock, the argument that, in this case, we have before us an invalid agreement for liquidated damages, fails. Notwithstanding that the agreement speaks of a loan of the stocks to Mr. Ballard, we are persuaded that it is in fact an alternative contract as defined in Page on the Law of Contracts (2d ed.), volume IV, section 2114, and Sutherland on Damages (4th ed.), volume I, section 282. (See, also, Hale on Damages, 2d ed., section 61, and *Smith* v. *Bergengren*, (1891) 153 Mass. 236 [26 N. E. 690, 10 L. R. A. 768].)

Appellant takes the position that since the probate order provided that the amount allowed on the claim might be reduced by returning stocks reckoned at their value as of January 15, 1933, and the judgment on the rejected portion of the claim made no provision for payment by return of stocks, the two judgments are inconsistent and cannot both stand. Respondent has consented in her brief that the judgment in this case may be modified in such manner as to protect the interests of the parties. The value of the stocks was much larger on January 15, 1932, than one year later. We do not think appellant will be injured in any way if permitted to pay off the debt in its entirety, as represented by the allowance of the probate court and the judgment in this case, or as to any part thereof by returning any of the stocks delivered by Mr. Miller to Mr. Ballard and securing credit therefor on the indebtedness in the value of the returned stock as of January 15, 1932.

Judgment affirmed, but to be modified by the trial court to permit payment by means of returned stock at the value of January 15, 1932, the parties to bear their own costs.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 21, 1936.