[No. E041628. Fourth Dist., Div. Two. Aug. 30, 2007.]

HELEN TOWNSEND McDONALD, Claimant and Appellant, v. STRUCTURED ASSET SALES, LLC, Objector and Respondent.

**COUNSEL**

Garrett & Heaton and Richard L. Heaton for Claimant and Appellant.

Horspool & Parker and J. David Horspool for Objector and Respondent.

## Opinion

**GAUT, J.**—Appellant Helen Townsend McDonald (McDonald), a creditor of the estate of her deceased brother, Edward Townsend (Townsend), appeals from a probate order denying her creditor's claim. Pursuant to an agreement entered into between Townsend and McDonald, McDonald's creditor's claim asserts an ownership interest in a portion of Townsend's royalties and other business income. She also claims Townsend owed her $201,108 in royalties earnings pursuant to the agreement.

McDonald contends the trial court erred in denying her creditor's claim because it was not timely filed. She asserts her creditor's claim was timely filed on February 24, 2004, within the four-month statute of limitations for filing a creditor's claim. McDonald argues that, even though her initial claim did not state the amount of her claim, her supplemental creditor's claim, filed on September 6, 2005, did so. McDonald further argues that her claim was properly filed as a creditor's claim because it was based on a contract. Therefore she was not required to assert her creditor's claim by bringing a petition under Probate Code section 850.[1]

Respondent Structured Asset Sales, LLC (SAS), argues McDonald is appealing a nonappealable order and therefore this court must dismiss her appeal. We agree.

### 1. Facts

Townsend was an exceedingly successful songwriter, who earned royalties on his songs amounting to hundreds of thousands of dollars annually. Townsend died intestate in August 2003. At the time, he had three grown children and no spouse.

Townsend's son, Clef Michael Townsend (Michael), sold and assigned his interest in Townsend's estate to SAS in June 2004. In addition, Michael granted David Pullman, corporate executive officer of SAS, power of attorney to act on Michael's behalf for the purpose of insuring that SAS received all the benefits of Michael's inheritance.

According to McDonald's declaration supporting her creditor's claim, McDonald, who was very close to Townsend, agreed to give him $10,000 in exchange for a 10 percent interest in Townsend's business income, including copyrighted material and royalties. Townsend memorialized the agreement in

---

[1] Unless otherwise noted, all statutory references are to the Probate Code.

a notarized letter dated January 11, 1995 (Royalties Agreement). Townsend also requested in his letter that McDonald serve as representative of his estate upon his death.

McDonald did not receive any of the proceeds promised, which accrued during Townsend's life, because, after agreeing to give McDonald a share of his royalties, Townsend went into substantial debt. He borrowed large sums of money against his future royalties from various music companies that were collecting the royalties on Townsend's behalf. McDonald told Townsend he need not pay her any of the proceeds owed until he was financially able to do so. As of Townsend's death, McDonald was owed $201,108 pursuant to the Royalties Agreement.

On December 8, 2003, McDonald filed a petition for letters of administration. On January 29, 2004, the court issued letters of administration appointing McDonald administrator and personal representative of Townsend's estate.

On February 24, 2004, McDonald filed a creditor's claim, asserting her rights under the Royalties Agreement, including recovery of unpaid royalties Townsend owed her during his life. The total amount claimed was stated in her claim as: "$AMOUNT NOT YET ASCERTAINED. SEE ATTACHED EXHIBIT 'A'." Exhibit A was a copy of the Royalties Agreement.

On September 6, 2005, McDonald filed a supplement to her creditor's claim, stating that the total amount owed her for the period preceding Townsend's death amounted to $201,108, which consisted of 10 percent of the royalties earned from January 2003 until Townsend's death.

On March 14, 2006, pursuant to section 9252, the probate court ordered McDonald to file a petition to approve her claim. Accordingly, McDonald filed a petition, along with her supporting declaration, claiming she was entitled to 10 percent interest in Townsend's business income, including copyrighted material and royalties, from the date of the Royalties Agreement until his death, plus the right to 10 percent of all income from Townsend's estate earned after Townsend's death.

On April 6, 2005, SAS, as a beneficiary to the Townsend Estate and as assignee of Michael's interest in the estate, filed an objection and supplement to McDonald's creditor's claim. SAS alleged the Royalties Agreement was highly suspect as to its terms and content, was vague and ambiguous, lacked adequate consideration, and did not qualify as a will; Townsend was misconstruing the true meaning of the agreement terms; the agreement in actuality was a $10,000 loan; the agreement was over 11 years old and therefore any

contract claim was barred by the statute of limitations; and McDonald's separate request for extraordinary fees was excessive. SAS requested the court to reject McDonald's entire creditor's claim or alternatively that McDonald be reimbursed from the estate for the $10,000 she lent Townsend, plus legal statutory interest.

On May 11, 2006, SAS filed a supplemental objection to McDonald's creditor's claim, in which SAS argued that McDonald should have retained separate counsel to assert her creditor's claim because there was a conflict of interest, and McDonald should not receive any extraordinary fees related to her creditor's claim. SAS further objected to McDonald's attorney filing in Los Angeles a petition to establish a conservatorship for Michael.

On June 7, 2006, the trial court held a hearing on the petition for preliminary distribution. Other issues raised included approval of McDonald's creditor's claim.

The court took the matter under submission, and on August 16, 2006, issued a written decision denying McDonald's creditor's claim. In doing so, the court explained that a creditor's claim must be filed within four months after issuance of the letters of administration or 60 days after notice of administration is given to the creditor. The supplemental creditor's claim was filed on March 22, 2006, approximately two and a half years after the estate was opened. McDonald knew of the estate proceedings and of the Royalties Agreement, upon which McDonald's claim was based. The court concluded McDonald's claim was untimely and McDonald should have filed a petition under section 850 because the agreement involved a "present transfer."

### 2. Appealability of Order Denying McDonald's Claim

SAS maintains this court must dismiss McDonald's appeal because an appeal may not be taken from the order rejecting her claim. We agree.

■ Generally, a ruling in a probate proceeding is not appealable unless expressly made appealable by statute. (*Estate of Martin* (1999) 72 Cal.App.4th 1438, 1441–1442 [86 Cal.Rptr.2d 37].) Citing *Estate of Moore* (1974) 43 Cal.App.3d 334 [117 Cal.Rptr. 571] (*Moore*), SAS argues the order in the instant case is not appealable because it is not one of the orders enumerated as appealable under section 1300.

In *Moore, supra*, 43 Cal.App.3d 334, the trial court ruled the creditor had waived her probate creditor's claim by failing to bring it within the limitation period. On appeal, the court in *Moore* dismissed the appeal on the ground there was no statutory provision allowing the creditor to appeal the trial court

ruling. The court in *Moore* stated: "It has long been settled that there is no right to appeal from any orders in probate except those specified by section 1240 [predecessor statute to section 1300]. The statute is exclusive [citations], and much narrower in its scope than Code of Civil Procedure section 904.1. [Citation.] Neither an order overruling objections to an account nor an order rejecting a claim are specifically mentioned in the statute. . . . *Estate of Middleton* [(1963)] 215 Cal.App.2d 324 [30 Cal.Rptr. 155], and *Orth* v. *Superior Court* [(1966) 244 Cal.App.2d 474 [53 Cal.Rptr. 156]], most recently held that there is no right to appeal from an order rejecting a probate claim. Thus, there is no need to discuss the contention that the order of the court below was appealable as one directing or allowing the payment of a debt. The relief sought, in fact, was an order approving Anne's claim which had already been rejected [citation]." (*Moore, supra*, at pp. 341–342, citation omitted.)

McDonald argues the order denying her creditor's claim is appealable under section 1300, subdivision (d). That provision states: "In all proceedings governed by this code, an appeal may be taken from the making of, or the refusal to make, any of the following orders: . . . [¶] . . . [¶] (d) Directing or allowing payment of a debt, claim, or cost." (*Ibid.*) As indicated in *Moore, supra*, 43 Cal.App.3d 334, that provision is inapplicable because the relief McDonald sought was an order approving her probate claim, not an order directing or allowing payment of a debt.

*Moore* relied on *Orth v. Superior Court, supra*, 244 Cal.App.2d 474 (*Orth*), which stated: "there is no right to appeal from the rejection of a probate claim. [Citations.] Therefore, the appeal which was taken from the denial by the probate court of petitioner's motion for permission to file an amendment of the claim, pursuant to section 473 of the Code of Civil Procedure, is unauthorized and should be dismissed." (*Orth, supra*, at pp. 475–476.)

*Orth* relied on *Miller v. California Trust Co.* (1936) 15 Cal.App.2d 612 [59 P.2d 1035] (*Miller*), in which the *Miller* court addressed the same argument McDonald raises in this court; that an order rejecting a probate creditor's claim is appealable under language in section 1240 (currently section 1300), which allows an appeal of an order " 'directing or allowing the payment of a debt, claim, legacy or attorney's fee.' " (*Miller, supra*, at p. 616; see also *Orth, supra*, 244 Cal.App.2d at pp. 475–476.)

In *Miller*, the probate court made an order allowing the appellant's creditor's claim in part and rejecting it in part. The appellant subsequently filed a separate action, challenging rejection of his creditor's claim in part and requesting that the rejected portion of his claim be allowed. (*Miller, supra*, 15 Cal.App.2d at pp. 614–615.) The respondent argued that the order rejecting in part the appellant's creditor's claim had res judicata effect.

■ The *Miller* court disagreed, concluding it was not a final order as to the rejected portion of the claim: "As appellant points out, section 1240 of the Probate Code [now section 1300], treating of 'Appealable Orders' includes, as such, an order 'directing or allowing the payment of a debt, claim, legacy or attorney's fee.' [Now § 1300, subd. (d).] But we note a distinction between an order *directing payment or allowing payment of* a claim and an order of the court merely *approving* or '*allowing*' the claim. We believe that the order which is appealable under this section is an order directing or allowing *payment* of a claim which has already been 'allowed.' . . . There is no provision in section 1240 of the Probate Code permitting an appeal from an order rejecting a claim in whole or in part, and the Supreme Court has said: 'Where, as here, there has been a partial rejection of the claim, the only recourse of the dissatisfied creditor is a suit. [Citation.]' [Citation.]" (*Miller, supra*, 15 Cal.App.2d at p. 616.)

■ An order in which the trial court approves or rejects a probate creditor's claim brought by a personal representative is entirely different from the court ordering or refusing to order payment of a debt, claim, or cost. For this reason, the courts have consistently concluded that an order approving or rejecting a probate creditor's claim is not encompassed by section 1300 or its predecessor statutes. (*Moore, supra*, 43 Cal.App.3d at p. 341; *Orth, supra*, 244 Cal.App.2d at p. 475; *Estate of Middleton, supra*, 215 Cal.App.2d at p. 328; and *Miller, supra*, 15 Cal.App.2d at p. 616.)

All of the statutes preceding section 1300,[2] including section 1240, contained similar language listing appealable orders and have all included as appealable the making or refusal to make an order directing or allowing payment of a debt, claim, or cost. Yet the courts have consistently distinguished such an order from that of an order approving or rejecting a probate creditor's claim. The courts have consequently held that an order approving or rejecting a probate creditor's claim is not appealable because it is not one of the statutorily enumerated probate orders that may be appealed.

■ The appropriate course of action when a creditor's claim is rejected is for the creditor to commence a separate action on the rejected claim challenging rejection of the creditor's claim. (*Miller, supra*, 15 Cal.App.2d at pp. 614–615; §§ 9250, 9252.) This is the exclusive method of enforcing a claim which has been rejected by the court.

---

[2] The statutes preceding section 1300 include section 1240, enacted in 1931, and repealed in 1987. Section 1297 replaced section 1240, operative in 1988. Section 7240 replaced section 1297, operative in 1989, and section 1300 replaced section 7240 in 1997.

Section 9252 provides that if the personal representative of the estate, such as McDonald, is a creditor, her creditor's claim shall be submitted to the court for approval or rejection. McDonald did so. Section 9252, subdivision (a) further provides, ". . . The court or judge may in its discretion require the creditor to file a petition and give notice of hearing." In accordance with the court's request, McDonald filed such a petition. After hearing the matter, the court rejected McDonald's petition. Section 9252 states in part that "(c) If the court or judge rejects the claim, the personal representative or attorney may bring an action against the estate."

Under section 9252, subdivision (c), if McDonald wished to challenge the court's ruling rejecting her creditor's claim, she was required to bring a separate action against the estate. She could not simply appeal the order rejecting her creditor's claim because there was no authority allowing her to appeal an order rejecting her creditor's claim. Despite numerous amendments to section 1300 and its predecessor statutes, and despite case law consistently holding that an order rejecting a probate creditor's claim is not appealable, the Legislature has chosen not to add statutory language providing that an order rejecting a probate creditor's claim is an appealable order.

Because the order rejecting McDonald's creditor's claim is not appealable under section 1300, subdivision (d), this court does not have jurisdiction and must dismiss McDonald's appeal.

McDonald alternatively argues the trial court did not "reject" her creditor's claim within the meaning of section 9252, subdivision (c), because the court did not follow the very specific procedure required for rejecting a creditor's claim set forth in section 9250, subdivision (c). McDonald complains that "the trial court's one sentence 'denial' did not come even remotely close to containing all of the required elements" of section 9250, subdivision (c). In addition, McDonald complains the court did not use the mandatory Judicial Council form DE-174, entitled, "Allowance or Rejection of Creditor's Claim."

The trial court's order rejecting McDonald's claim consisted of a relatively detailed written order addressing the issue raised at the hearing on June 7, 2006. As to McDonald's creditor's claim, the court not only stated McDonald's claim was "denied," but also explained its reasons for doing so.

Section 9250 states in relevant part: "(a) When a claim is filed, the personal representative shall allow or reject the claim in whole or in part. [¶] (b) The allowance or rejection shall be in writing. The personal representative shall file the allowance or rejection with the court clerk and give notice to the creditor as provided in Part 2 (commencing with Section 1200) of Division 3, together with a copy of the allowance or rejection. [¶] (c) The allowance or rejection shall contain the following information: [¶] (1) The name of the creditor. [¶] (2) The total amount of the claim. [¶] (3) The date of issuance of letters. [¶] (4) The date of the decedent's death. [¶] (5) The estimated value of the decedent's estate. [¶] (6) The amount allowed or rejected by the personal representative. [¶] (7) Whether the personal representative is authorized to act under the Independent Administration of Estates Act (Part 6 (commencing with Section 10400)). [¶] (8) A statement that the creditor has three months in which to act on a rejected claim. [¶] (d) The Judicial Council may prescribe an allowance or rejection form, which may be part of the claim form. Use of a form prescribed by the Judicial Council is deemed to satisfy the requirements of this section."

This provision is inapplicable here because it concerns notice of rejection by the estate representative, whereas in the instant case, notice of rejection was by the court under section 9252. Furthermore, Judicial Council form DE-174 is used when an estate representative allows or rejects a creditor's claim, as stated on the form: "PERSONAL REPRESENTATIVE'S ALLOW-ANCE OR REJECTION." In the instant case, the probate court, rather than the estate representative, considered and rejected McDonald's claim. We further note that McDonald filed a proposed form DE-174 order approving her claim. This indicates that even if section 9250 and form DE-174 were applicable, McDonald was already on notice of all of the information required pursuant to section 9250.

Also, McDonald did not raise in the trial court any objection to the form of the court's rejection of her claim in the trial court and therefore cannot now raise such objections for the first time on appeal, particularly since, had McDonald objected, any deficiencies under section 9250, subdivision (c) could have been cured in the trial court.

More importantly, even assuming the order rejecting McDonald's claim was a "denial," not a "rejection," which is clearly a semantical distinction without a difference under the facts in this case, the order is not one of the enumerated appealable orders under section 1300, and therefore this court must dismiss McDonald's appeal. (*Efron v. Kalmanovitz* (1960) 185 Cal.App.2d 149, 152 [8 Cal.Rptr. 107].)

### 3. Disposition

McDonald's appeal is dismissed. SAS is awarded its costs on appeal.

Hollenhorst, Acting P. J., and Miller, J., concurred.