Filed 6/27/25  Woodson v. Ayotte CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BILLY ADAM WOODSON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JEFFREY AYOTTE,<br><br>    Defendant and Respondent. | G063519<br><br>(Super. Ct. No. 30-2020-01164959)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Seni B. Linnebur, Judge. Affirmed. Motion to dismiss denied.

Aaron Charles Gregg for Plaintiff and Appellant.

Velasco Law Group, Laura N. Zolnekoff and Richard J. Radcliffe for Defendant and Respondent.

\*        \*        \*

Plaintiff Billy Adam Woodson appeals following a sustained demurrer in this probate case.[1] Billy sought to set aside a later trust, which left him as 50 percent beneficiary to his father's estate, in favor of an earlier version that named him as sole beneficiary. Defendant is Jeffrey Ayotte, successor trustee. The probate court sustained the demurrer without leave to amend on the grounds of laches.

We find no error in the trial court's ruling that Billy, who did not seek to set aside the later trust until both of the key witnesses who could defend it were deceased, had waited too long, resulting in prejudice to Ayotte. We also conclude the statute of limitations to contest the trust had long since expired by the time Billy filed the relevant petition. Accordingly, we affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

I.

HISTORICAL FACTS

Billy and Rebecca Woodson were the children of Hiro Woodson. In 2011, Hiro executed the Hiro Woodson Revocable Trust (2011 Trust). The 2011 Trust named Billy as successor trustee. The 2011 Trust stated that upon Hiro's death, the trustee shall transfer the trust property to Billy. Rebecca was specifically disinherited.

In July 2016, Hiro executed a new trust (the 2016 Trust), which named herself and Rebecca as cotrustees, authorized to act jointly or severally. The 2016 Trust property was listed as a residential home in Cypress, two bank accounts, and what appears to be a brokerage or

---

[1] Due to common surnames, we refer to the parties by their first names. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475–476, fn. 1.)

retirement account. Rebecca was named as successor trustee, with Billy as the second successor trustee.

The 2016 Trust stated that after Hiro's death, the trust's assets would be distributed. Rebecca would receive all of Hiro's personal property and possessions, including household furniture and jewelry. Rebecca would also receive 20 percent of the net value of the trust estate. Billy and Rebecca were to share the remainder of the estate equally.[2]

Hiro died on December 18, 2018. Pursuant to the 2016 Trust's terms, Rebecca became the sole trustee.

## II.

### PROCEDURAL HISTORY

*A. October 8, 2020 Petition*

On October 8, 2020, Billy filed a Petition to Compel Trustee (Petition to Compel). The Petition to Compel alleged that notification under Probate Code section 16061.7[3] had not been served. Among other things, Billy requested the notification, including an accounting and turning over his portion of the 2016 Trust. The Petition to Compel did not seek to undo or overturn the 2016 Trust.

The Petition to Compel stated that he became aware of the "2016 estate plan until just prior to" Hiro's death in 2018. Billy's Petition to Compel attached a copy of the 2016 Trust. Thus, Billy was aware not only aware of the 2016 Trust's existence by that time, he also had a copy of it.

---

[2] Specific gifts of $5,000 each were also left to specific family members.

[3] Subsequent statutory references are to the Probate Code unless otherwise indicated.

3

On June 14, 2021, Rebecca filed a response through her attorney, Sidney Mendlovitz, which Mendlovitz verified. The response, among other things, stated that she had sent the required notice under section 16061.7 to Billy in March 2019. A copy of the notice was attached to the response, along with an accounting dated August 2020, and correspondence from Mendlovitz to Billy and his counsel dated from March 2019 to November 2020.

## B. January 27, 2022 850 Petition

Mendlovitz died in October 2021. Rebecca died on November 1, 2021. Ayotte, Rebecca's spouse, was substituted for Rebecca in Billy's pending action as her successor in interest.[4]

On January 27, 2022, Billy filed a petition for an order confirming trust assets pursuant to section 850 (the 850 petition). The petition alleged that the 2011 Trust was the operative trust and that Rebecca, before her death, had improperly acted as successor trustee.

On June 22, Ayotte, as successor trustee to Rebecca, filed an objection to the 850 petition. The objection included a copy of the 2016 Trust. The objection also stated that in 2021, Rebecca had negotiated, through counsel, the sale of the Cypress property from the 2016 Trust to herself, and had issued Billy a check for $642,788.71 as a distribution payment, which he apparently refused to accept.

## C. Amended Petition

On March 14, 2023, Billy filed an amended petition. He sought to declare the 2011 Trust valid and the 2016 Trust invalid and to appoint himself as trustee. He also requested an accounting and for the return of the title to the Cypress property. Billy claimed, among other things, that at the

---

[4] Rebecca, via a will and trust, left her entire estate to Ayotte.

4

time the 2016 Trust was executed, Hiro was not of sound mind and lacked capacity and intent, and the 2016 Trust was the result of Rebecca's undue influence.

*D. Demurrer Proceedings*

On June 9, 2023, Ayotte filed a demurrer to the amended petition, arguing the petition was barred due to the expiration of the 120-day statute of limitations triggered by the notification by trustee. The matter was briefed.

There is no reporter's transcript of the hearing, but apparently, the court requested supplemental briefing on the issue of laches. The parties provided briefs.

Apparently, there was another hearing on October 18, 2023, for which we have no reporter's transcript. According to a signed order after the hearing, the court sustained Ayotte's demurrer without leave to amend, concluding Billy's petition was "barred due to the doctrine of laches." Billy now appeals.

## DISCUSSION

### I.

#### BILLY'S DEFICIENT BRIEFING

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) "The burden of affirmatively demonstrating error is on the appellant. This is a general principle of appellate practice as well as an ingredient of the constitutional doctrine of reversible error." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)

5

The appellant must cite to the record to direct the reviewing court to the pertinent evidence or other matters in the record that demonstrate reversible error. (Cal. Rules of Court, rule 8.204(a)(1)(C)[5]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) This is not optional; it is a *basic* requirement for an appellate brief.

Billy, who did not include a single citation to the record in the Statement of Facts in his opening brief, cites cases from 1945 and 1959[6] to argue that his failure to cite to the record should not result in a waiver of his arguments on appeal. Not only do neither of those cases stand for that proposition, they also ignore a multitude of more recent cases stating the opposite, as well as the specific mandate of the pertinent rule of court. (Rule 8.204(a)(1)(C).)

"'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 28; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768; rule 8.204(a)(1)(C).)

We note that instead of arguing in his reply brief that his briefing was perfectly adequate, despite the complete lack of record references, Billy could have sought to correct this error once it was pointed out by Ayotte.

---

[5] Subsequent rule references are to the California Rules of Court.

[6] See *Russi v. Bank of America National Trust & Savings Assn.* (1945) 69 Cal.App.2d 100, and *Toeniggs* v. *Griffeth* (1959) 169 Cal.App.2d 717.

Instead, he chose to double down on this obvious failure and defend the indefensible in his reply brief.

We would be well within our discretion to deem Billy's arguments waived. In the interests of justice, we will not—but to the extent we cannot readily locate any fact in the record deemed pertinent by Billy, we disregard that fact.

## II.

### AYOTTE'S MOTION TO DISMISS

Ayotte has moved to dismiss the appeal because Billy sought to appeal from the order sustaining the demurrer, rather than from a final judgment. Ayotte is correct. "[A] ruling in a probate proceeding is not appealable unless expressly made appealable by statute." (*McDonald v. Structured Asset Sales, LLC* (2007) 154 Cal.App.4th 1068, 1072.) An appeal may be taken from a judgment or "[f]rom an order made appealable by the Probate Code . . . ." (Code Civ. Proc., § 904.1, subd. (a)(1), (10).) Although the notice of appeal indicates [Billy] is appealing from a "[j]udgment of dismissal after an order sustaining a demurrer, the court never entered such a judgment. The only other avenue for appeal is "[f]rom an order made appealable by the Probate Code . . . ." (Code Civ. Proc., § 904.1, subd. (a)(10).)

Billy points us to the prayer in his petition and contends we should deem the order sustaining the demurrer as an order which denied the relief sought in that prayer. That, however, is expressly not what the court did. It never denied the specific relief sought in the prayer, and in any event, those "orders" are not the orders identified in the notice of appeal.

In the absence of the denial of the petition, however, "where it is clear the court intended to entirely dispose of the action, we are empowered to amend the order [sustaining a demurrer] to make it an appealable

7

judgment of dismissal." (*Estate of Dito* (2011) 198 Cal.App.4th 791, 799-800; see *O'Grady v. Merchant Exchange Productions, Inc.* (2019) 41 Cal.App.5th 771, 776, fn. 3 [appellate court may deem the order sustaining the demurrer to incorporate a judgment of dismissal].) As it is clear the court intended to fully dispose of the case by sustaining the demurrer without leave to amend, we exercise our discretion to treat the court's order sustaining the demurrer as a final judgment. Accordingly, the motion to dismiss is denied.

## III.

### STANDARD OF REVIEW

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken." (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) Because Billy does not challenge the court's decision not to grant leave to amend, we need not consider the standard of review on that point.

## IV.

### LACHES

"The defense of laches is properly raised by general demurrer." (*Williams v. International Longshoremen's and Warehousemen's Union, Local No. 10* (1959) 172 Cal.App.2d 84, 86.) "To establish a successful affirmative defense based on laches, a defendant must show that the plaintiff unreasonably delayed in filing suit, together with either the plaintiff's acquiescence in the conduct about which it complains *or* prejudice to the defendant because of the delay. [Citations.] 'The basic elements of laches are:

8

(1) an omission to assert a right; (2) a delay in the assertion of the right for some appreciable period; and (3) circumstances which would cause prejudice to an adverse party if assertion of the right is permitted.'" (*City of Hesperia v. Lake Arrowhead Community Services Dist.* (2023) 93 Cal.App.5th 489, 511–512.)

Billy's verified Petition to Compel stated that he became aware of the "2016 estate plan" just before Hiro's death in 2018. Mendlovitz's verified notice included copies of correspondence between Mendlovitz and Billy dated as early as March 2019, discussing the "Woodson Trust," and Rebecca's role as trustee. Among other things, a March 21 letter stated: "[Rebecca] will be in no position to distribute the Trust assets until the marshalling of the assets is completed, all debts paid, taxes paid for 2018, and funds earmarked for the 2019 tax returns." Billy's Petition to Compel admits he received Mendlovitz's March 21 correspondence.

Accordingly, there is strong evidence, based solely on evidentiary documents and admissions in the record, that Billy knew of the existence of the 2016 Trust as early as December 2018 and by no later than March 2019.

In the amended petition, Billy stated that "[u]pon becoming Trustee" after Rebecca's November 1, 2021 death, he "became aware of medical records" showing Hiro had a lack of capacity when she executed the 2016 Trust.

The record demonstrates that Billy was aware of the existence of the 2016 Trust by no later than March 2019 and Hiro's medical records by no later than November 2021. Indeed, as early as March 21, 2019, Billy was already questioning Hiro's mental capacity to execute the 2016 Trust. Mendlovitz's March 21, 2019 response to Billy stated: "[Rebecca] disputes the characterization of your mother's mental condition in July 2016, as do

9

others." Despite these facts, Billy waited until March 14, 2023, some four years after the latest date upon which he learned of the 2016 Trust's existence, to file the amended petition seeking to invalidate it.

The delay that constitutes laches is measured from the time when a plaintiff knew or should have known about an alleged claim. (*Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 406 (*Drake*).) In this case, we find that delay was at least four years. We find this delay constitutes both the omission to assert a right and a delay in the assertion of the right for an appreciable period. (*City of Hesperia v. Lake Arrowhead Community Services Dist., supra,* 93 Cal.App.5th at pp. 511–512.)

The only question left is whether the delay was prejudicial. "[P]rejudice may be factual in nature or compromise the presentation of a defense." (*Drake, supra,* 217 Cal.App.4th at p. 406.) Based on the facts in the pleadings, which are admissions by Billy, we find the delay was prejudicial. (See *Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 132 [pleadings constitute admissions].)

In *Drake*, the court determined that an heir's claims were barred by laches when the heir waited to challenge a trust's amendments on the grounds of mental capacity and undue influence until all relevant witnesses were deceased. "[The heir's] failure to bring the action until after [the settlor] had passed away was necessarily prejudicial where, as here, each and every cause of action set forth in the underlying petition centered on [the settlor]— her mental capacity, defendants' influence over her, and her understanding of the [trust amendments] and her estate." (*Drake, supra,* 217 Cal.App.4th at p. 409.)

The same is true here. By the time Billy sought to nullify the 2016 Trust, both Rebecca and Mendlovitz, the attorney who prepared the

10

2016 Trust and handled its administration after Hiro died, were themselves deceased. Without Rebecca's and Mendlovitz's testimony, a fair trial on the merits would be highly compromised. The allegations of the amended petition reveal just how prejudicial the lack of their testimony would be. Billy alleged that Rebecca had personal knowledge of Hiro's incapacity; Rebecca exercised undue influence in the execution of the 2016 Trust; Rebecca had such "control and influence" over Hiro that Hiro "did whatever Rebecca . . . instructed her to do"; and Rebecca "dictated the contents" of the 2016 Trust.

Given that Billy had knowledge of the 2016 Trust and was making claims about Hiro's lack of capacity as early as 2019, allowing Billy to proceed to trial without the ability of Ayotte to present the key witnesses who could defend the 2016 Trust against Billy's claims would be highly prejudicial. Accordingly, we find the trial court did not err by finding the doctrine of laches applied to the amended petition.

V.

STATUTE OF LIMITATIONS AS ALTERNATE GROUNDS

Because there is no reporter's transcript in the appellate record, we have no idea what the trial court might have said about Ayotte's original claim regarding the statute of limitations. But we agree with Ayotte that the 120-day statute of limitations provides valid alternate grounds for sustaining the demurrer. "An order sustaining a demurrer without leave to amend may be affirmed on any ground stated in the demurrer, even if the trial court did not act on that ground." (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2019) 42 Cal.App.5th 918, 934.)

Section 16061.7 states that a trustee must serve a notification on each beneficiary, by mail to the last known address or personal delivery, "When a revocable trust or any portion thereof becomes irrevocable because

11

of the death of one or more of the settlors of the trust . . . ." (§ 16061.7, subd. (a)(1).) "[A]n action to contest the trust," must be brought within not more than "120 days from the date the notification by the trustee is served upon the person, or 60 days from the date on which a copy of the terms of the trust is delivered pursuant to Section 1215 to the person during that 120-day period, whichever is later." (§ 16061.8.)

There are numerous dates from which the section 16061.7 notice might be dated, starting with the notice dated March 21, 2019 later included in Mendlovitz's verified response to the Petition to Compel. But at the very latest, the record reveals that Billy was served with a copy of that notice as part of Ayotte's response to his Petition to Compel on June 16, 2021. Assuming, for the sake of argument, this was the first time Billy had ever been served with this notice, it nonetheless began to run the clock on the statute of limitations. After June 16 the 120 days would have been on or about October 14, 2021. Billy did not file the amended petition until some 17 months later, in March 2023.[7] Even using this latest and most generous date, Billy's amended petition contesting the 2016 Trust was filed long after the statute of limitations had expired.

---

[7] Even if we were to construe the 850 Petition, which sought to validate the 2011 Trust, as seeking to "contest" the 2016 Trust within the meaning of the statute, that petition was not filed until January 2022.

## DISPOSITION

The judgment is affirmed. The motion to dismiss is denied.

Ayotte is entitled to his costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.